J-A15020-17 & J-A15021-17

2017 PA Super 334

COMMONWEALTH OF PENNSYLVANIA

v.

JALENE R. MCCLURE

APPEAL OF: RETIRED JUDGE BRADLEY P. LUNSFORD

IN THE SUPERIOR COURT
OF
PENNSYLVANIA

No. 1982 MDA 2016

Appeal from the Order Entered November 22, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001778-2012

COMMONWEALTH OF PENNSYLVANIA

v.

JALENE R. MCCLURE

APPEAL OF: RETIRED JUDGE BRADLEY
P. LUNSFORD

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 3 MDA 2017

Appeal from the Order Entered December 9, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001778-2012

COMMONWEALTH OF PENNSYLVANIA          IN THE SUPERIOR COURT OF

|                    |   | PENNSYLVANIA |
|--------------------|---|--------------|
| Appellee           |   |              |
| v.                 |   |              |
| JALENE R. MCCLURE  |   |              |
| Appellant          |   | No. 145 MDA 2017 |

Appeal from the Order Entered December 22, 2016
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0001778-2012

BEFORE: MOULTON, J., SOLANO, J., and MUSMANNO, J.

OPINION BY SOLANO, J.: **FILED OCTOBER 20, 2017**

In 2014, Jalene R. McClure was convicted by a Centre County jury of assault and other offenses relating to injuries to a child at a daycare center that McClure operated. In 2016, we reversed McClure's conviction and remanded for a new trial. ***Commonwealth v. McClure***, 144 A.3d 970 (Pa. Super. 2016). This case returns to us as a result of proceedings on remand in which McClure has sought to preclude retrial on double jeopardy grounds. Part of her argument in support of that relief is that there was misconduct during her trial on the part of the Centre County prosecutors and the presiding judge, the Honorable Bradley P. Lunsford.

During the trial court proceedings on her preclusion motion, McClure issued two subpoenas to former Judge Lunsford to obtain documents and testimony from him. Lunsford's motions to quash those subpoenas were denied, and this opinion addresses Lunsford's appeals at Nos. 1982 MDA

2016 and 3 MDA 2017 from the November 21, 2016[1] and December 9, 2016 orders denying those motions. While those appeals were pending, the trial court proceeded with the case and ultimately denied McClure's double jeopardy motion. The second part of this opinion addresses McClure's appeal at No. 145 MDA 2017 from the December 22, 2016 order denying her motion to preclude retrial. Subject to instructions set forth in this opinion, we affirm in part the November 21, 2016 order denying Lunsford's first motion to quash; we vacate the December 9, 2016 order denying Lunsford's second motion to quash; and we vacate the December 22, 2016 order denying McClure's motion to preclude retrial.

The charges relate to McClure's operation of her daycare business out of her home in August 2010. On August 18, 2010, the mother of five-month old P.B., one of the children entrusted to McClure's care, picked up her daughter from the daycare and was told by McClure that P.B. was sick and had vomited. While driving home, the mother noticed that P.B. was losing consciousness and took her to the hospital, where it was determined that P.B. had sustained head injuries, including a fractured skull and retinal hemorrhaging.

Police Detective Dale Moore and a Children and Youth Services (CYS) employee interviewed McClure on the evening of the incident. McClure

---

[1] The order dated November 21, 2016 was entered on the docket on November 22, 2016. For ease of reference, we refer to it as the November 21, 2016 order.

- 3 -

insisted during that interview that nothing had happened to P.B. at the daycare facility that day, but in an interview with Moore and the CYS employee five days later, on August 23, 2010, McClure gave verbal and written statements in which she said that she had tripped while carrying P.B. and fell, hitting P.B.'s head on a car seat.

After further investigation, McClure was charged with assault and other offenses, and was tried on September 8-11, 2014, before Judge Lunsford and a jury. During the trial, an expert testified that P.B.'s injuries were consistent with a child who was shaken, and he opined that the injuries were sustained at McClure's daycare facility on August 18, 2010. At the conclusion of the trial on September 11, 2014, the jury found McClure guilty of aggravated assault, simple assault, two counts of endangering the welfare of a child, and recklessly endangering another person.[2]

On October 13, 2014, prior to her sentencing, McClure moved for the recusal of Judge Lunsford. McClure alleged that Judge Lunsford had personal friendships with District Attorney Stacy Parks Miller, who was the lead prosecutor in her case, and with Parks Miller's co-counsel, Assistant District Attorney Nathan Boob. According to McClure, Judge Lunsford and the prosecutors engaged in text messaging, phone calls, social media contacts, and personal contacts outside of the courthouse. As examples of the personal relationships, McClure averred that:

---

[2] 18 Pa.C.S. §§ 2702(a)(1), 2701(a)(1), 4304(a)(1), and 2705.

- On September 14, 2014, three days after McClure's trial ended, Judge Lunsford was pictured with ADA Boob and other members of the district attorney's office who had been at an event called the "Color Run." Those pictures, showing Judge Lunsford at Champs Bar, were posted on social media, but later removed.

- On September 20, 2014, Judge Lunsford and his staff were at the Maryland shore. A picture of that event posted on social media showed Judge Lunsford with ADA Boob. Parks Miller posted comments about the picture.

The photo of Judge Lunsford and ADA Boob at the Maryland shore on September 20, 2014, and the comments about the photo by Parks Miller were attached as exhibits to McClure's motion.

McClure's motion also described a September 24, 2014 conversation initiated by Judge Lunsford with McClure's attorney, Bernard Cantorna, regarding McClure's trial. McClure alleged that "[b]oth the manner in which the trial was conducted and rulings from the trial court gave the appearance of a bias towards the prosecution and prejudice against the defense." Mot. for Recusal at ¶ 8. McClure alleged that during her trial:

> [I]t appeared to courtroom observers that deference was given to the district attorney's office, Stacy Parks Miller and Nathan Boob in the management of the trial, which did not appear to be extended to the defense.
>
> On numerous occasions, the court allowed the district attorney to engage in conduct in front of the jury that called into question the credibility and character of defense counsel and Ms. McClure's case. The manner in which the court made its rulings, whether intentional or not, imparted the appearance of partiality to the prosecution and a negative inference of defense counsel and [McClure]'s case.

*Id.* at ¶¶ 11-12 (numbers omitted). McClure listed examples of the court's allegedly biased rulings. *Id.* at ¶¶ 12-18. She also attached to her motion

- 5 -

an affidavit by Attorney Maren Lynn Chaloupka (a consultant for the defense who attended the first day of McClure's trial), who opined that "the overall tone of the District Attorney was . . . indignant and highly emotional" and the "the atmosphere during the trial was chaotic and permissive of the District Attorney's conduct." Among other things, Chaloupka found it extraordinary that the court permitted one Commonwealth attorney (Boob) to conduct direct examination of witnesses and permitted a second Commonwealth attorney (Parks Miller) to make objections and present redirect examination.

On October 23, 2014, McClure filed a motion to preserve and produce evidence, in which she alleged:

- "On information and belief, Judge Bradley P. Lunsford admitted that he text messaged Assistant District Attorney Nathan Boob (trial counsel) during the course of Jalene McClure's trial held on September 8-11, 2014";

- "It is believed that District Attorney Stacy Parks Miller [exchanged] text messages with this court"; and

- "On information, text messaging may have occurred between Assistant District Attorney Lindsay Foster and Judge Bradley P. Lunsford during the course of the McClure trial."

Mot. to Preserve and Produce Evid., 10/23/14, at ¶¶ 1, 4, 5. ADA Foster did not participate directly in McClure's trial, but assisted with preparation of some aspects of it. McClure sought a court order requiring Parks Miller, Boob, Foster, and Judge Lunsford to preserve any e-mails, instant messages, or other forms of electronic communications from August 4, 2014, until the date of the motion. McClure also sought production of copies

- 6 -

or screen shots of all information regarding those communications. McClure's motion was sent to Judge Lunsford on October 24, 2014.

On October 30, 2014, Judge Lunsford held a hearing on the motions for recusal and to preserve and produce evidence. At that hearing, counsel for McClure (Cantorna) sought to elicit testimony from his law partner, James N. Bryant, in support of McClure's motion to preserve and produce evidence. Cantorna claimed that Centre County Court of Common Pleas President Judge Thomas King Kistler told Attorney Bryant that Judge Lunsford admitted to sending text messages to ADA Boob during McClure's trial. Cantorna also averred that the request for text messages and communications from ADA Foster was "based on information that Mr. Bryant was given by the Judiciary of Centre County." N.T., 10/30/14, at 2-3. The Commonwealth objected that Bryant's proposed testimony would be inadmissible hearsay, and the court sustained that objection, precluding Bryant's testimony.

Parks Miller appeared at the October 30, 2014 hearing, but did not give testimony under oath. She said it was "absolutely untrue that this Court was texting Assistant District Attorney Nathan Boob during this trial." N.T., 10/30/14, at 5. Parks Miller continued, "In terms of the rest of the allegations, I am not dignifying them." *Id.* ADA Boob provided a document with a signed verification, stating that he did not exchange any text messages with Judge Lunsford during McClure's trial. *Id.* at 10. The trial court granted the Commonwealth's oral motion to quash a subpoena issued

to ADA Foster shortly before the hearing, and Foster did not appear at the hearing. *Id.* at 5-6. During the hearing, Judge Lunsford stated:

- "There is no photo of Mr. Boob and I after the Color Run. I can guarantee you that." *Id.* at 13.[3]

- "There are no text messages between me or either of these two prosecutors [Boob and Parks Miller]. None whatsoever. None." *Id.* at 23.

- "I will reiterate there are no text messages between me and these two [Boob and Parks Miller]. I swear to God." *Id.* at 25.

Judge Lunsford denied both the motion for recusal and the motion to preserve and produce evidence. N.T., 10/30/14, at 32. He explained that McClure had not satisfied her burden of proof. *Id.* at 29, 32. The next day, October 31, 2014, Judge Lunsford granted an October 20, 2014 motion by McClure to strike a Commonwealth notice of mandatory minimum sentences, and he sentenced McClure to an aggregate term of ten to twenty years' incarceration.

While the foregoing proceedings were taking place, McClure pursued an alternative source of information about possible communications between Judge Lunsford and the DA's Office. On October 23, 27, and 29, 2014, her counsel filed requests to obtain records of such communications from Centre County pursuant to the Pennsylvania Right to Know Law, 65 P.S. §§ 67.101

---

[3] Judge Lunsford later conceded that he saw Boob at Champs Bar after the Color Run, but not that he had posed for a picture with Boob. N.T., 10/30/14, at 26.

- 8 -

to 67.3104. McClure's counsel obtained those records on November 6, 2014. Mot. to Preclude Retrial, 10/20/16, at ¶¶ 19-20, 25.[4]

On November 7, 2014, McClure filed post-sentence motions, including a "Motion for Re-Sentencing and Recusal of Trial Court." Attached to that motion were phone records showing that text messages were exchanged between Judge Lunsford and DA Parks Miller, ADA Boob, and ADA Foster between August 4, 2014 (the day of jury selection in McClure's case), and October 10, 2014. The records showed that during the period of September 8-11, 2014, the days of McClure's trial, Judge Lunsford and ADA Foster exchanged 152 text messages; during the same period, Parks Miller received one message from Judge Lunsford. The records showed no text messages between Judge Lunsford and ADA Boob during McClure's trial. The records showed additional messages exchanged between Judge Lunsford and Parks Miller, Boob, and Foster before and after McClure's trial.[5]

---

[4] In a later proceeding involving similar requests for communications involving other Centre County judges, the Commonwealth Court held it was improper for the county to produce such records without first obtaining approval from the appropriate judicial open records officer. **See Grine v. County of Centre**, 138 A.3d 88 (Pa. Cmwlth.), **appeal denied**, 157 A.3d 483 (Pa. 2016).

[5] An affidavit by Nicole Courter, who obtained the records, stated that she counted the messages recorded on Judge Lunsford's phone records, and she provided the following totals:

> a. 364 text messages and 24 media messages were sent or received between the court and Assistant District Attorney Lindsay Foster between August 4, 2014 and September 8, 2014[.]

*(Footnote Continued Next Page)*

McClure's post-trial motions were assigned to the Honorable Pamela A. Ruest.[6]  On December 23, 2014, Judge Ruest denied all of McClure's post-trial motions, without explaining her ruling.  Judge Ruest's order stated that McClure had thirty days to file an appeal.

_(Footnote Continued)_ ─────────────

> b.      152 text messages and 1 media message were sent or received between the court and Assistant District Attorney Lindsay Foster from September 8, 2014 through September 11, 2014.  Of those 152 text messages, 100 texts were sent or received between the hours of 8:00 a.m. and 5:00 pm.  Many of those at times when the court was on the bench and trial [was] in session.
>
> c.      195 text messages and 3 media messages were sent between the court and Assistant District Attorney Lindsay Foster from after the trial on September 11, 2014 to October 10, 2014.
>
> d.      Assistant District Attorney Nathan Boob sent or received text messages with the court 13 times prior to trial and 63 text messages and 8 media messages post-trial from September 11, 2014 to October 10, 2014.
>
> e.      District Attorney Stacy Parks Miller received or sent 17 text messages and 1 media message prior to trial; received 1 text message from the court during trial; and received or sent 44 text messages and 4 media messages post trial to October 10, 2014.

Motion for Re-Sentencing and Recusal of Trial Court, Ex. A (Affidavit of Nicole E. Courter).  During oral argument, the Commonwealth contended that the number of messages may have been lower, but the Commonwealth submitted no documents to support that contention, and the records appended to the affidavit confirm the totals listed.

[6] On December 5, 2014, President Judge Kistler reassigned Judge Lunsford to preclude him from handling any criminal matters except those in DUI court.  Judge Kistler did not provide any explanation in the reassignment order.

On December 31, 2014, McClure filed an untimely supplemental post-sentence motion without leave of court. In that motion, McClure alleged that Judge Lunsford made false statements at the October 30, 2014 hearing on McClure's motion for recusal, and that Parks Miller and Boob knew those statements were false and did not correct the record. On January 7, 2015, the trial court issued an order allowing McClure to file her supplemental post-sentence motion pursuant to Pa.R.Crim.P. 720(B)(1)(b). The certified record contains no order formally disposing of that supplemental motion.

On January 19, 2015, McClure filed a notice of appeal from her judgment of sentence. In a Pa.R.A.P. 1925(a) opinion written in connection with McClure's appeal, Judge Lunsford wrote that the text messages between himself and members of the District Attorney's Office were not about McClure's case and "did not give either side strategic or tactical advantage." Trial Ct. Op., 4/30/15, at 4. Judge Lunsford stated that he "had no personal bias or prejudice regarding a party, Defendant, or a party's attorney . . . ." *Id.* Judge Lunsford also addressed McClure's accusation that he had made false statements at the October 30, 2014 hearing. He explained that when he said in that hearing that there were no text messages between himself and Parks Miller and Boob, he was referring only to messages during McClure's trial. He added that he had not recalled a message he had sent to Parks Miller during a lunch break regarding returning to the courtroom before the jury was seated. Trial Ct. Op., 4/30/15, at 29-30.

- 11 -

Judge Lunsford retired from the bench in January 2016. *See* Lunsford's Brief at 7.

On August 8, 2016, this Court decided McClure's direct appeal. We vacated McClure's judgment of sentence and remanded for a new trial. *See McClure*, 144 A.3d at 973. We based our decision on issues unrelated to McClure's claim of misconduct involving the prosecutors and Judge Lunsford.[7] McClure had argued in her appeal that the trial court erred by denying her motion for recusal, and she sought a remand for a hearing relating to alleged *ex parte* communications between the District Attorney and Judge Lunsford in another case (the criminal prosecution of Randall Brooks in 2012) so that she could bolster her claim of improper conduct. *See id.* at 980. But because we vacated McClure's judgment of sentence on other grounds and because Judge Lunsford had retired from the bench, we held that those issues were moot. *Id.* We also denied as moot McClure's request, filed during the pendency of the appeal, for an evidentiary hearing in relation to her recusal request. *Id.*

After our remand, on October 20, 2016, McClure filed her motion to preclude retrial on grounds of double jeopardy because the District Attorney's Office had engaged in prosecutorial misconduct. It is that motion

_____

[7] Specifically, we held that the trial court erred in admitting evidence during the trial regarding McClure's divorce; in admitting a redacted version of McClure's statement to police, rather than the entire statement; and in allowing a detective to testify about his opinion and that of a CYS worker regarding McClure's credibility. 144 A.3d at 975-77.

that is the subject of these appeals.  McClure alleged that *ex parte* communications between Judge Lunsford and members of the District Attorney's office "took place in the context of a deliberate effort to deprive Ms. McClure of any semblance of a fair trial."  She further alleged that Parks Miller elicited improper testimony, made misrepresentations about evidence during McClure's trial, and withheld exculpatory evidence (interviews with experts who prepared reports but were not called by the Commonwealth to testify at trial).[8]

In support of her assertion that Judge Lunsford had *ex parte* communications with members of the District Attorney's Office, McClure attached two exhibits to her motion to preclude a retrial:

- An affidavit from Maggie Miller, a former court reporter for Judge Lunsford.  Miller averred that during the criminal trial of Randal Brooks in April 2012, Judge Lunsford told Miller that Parks Miller, the lead prosecutor in Brooks' case, sent Judge Lunsford text messages complaining about his rulings.

- Phone records showing: Judge Lunsford sent Parks Miller a text message during the second day of McClure's trial; Parks Miller sent Judge Lunsford a message on the day McClure's trial ended, after the conclusion of the trial; and ADA Foster and Judge Lunsford exchanged 152 text messages during the time period of McClure's trial.

In connection with her motion to preclude retrial, McClure also filed a motion for discovery from the Commonwealth.  Among other things, she sought (1) cell phone records between ADA Foster, ADA Boob, and DA Parks

_____

[8] In light of our disposition, this opinion does not extensively discuss the grounds for McClure's motion other than the alleged misconduct involving former Judge Lunsford.

- 13 -

Miller from the date of jury selection in McClure's case to October 10, 2014; and (2) text messages among Judge Lunsford, Foster, Boob, and Parks Miller during that same period.

McClure also served former Judge Lunsford with a subpoena to testify and to bring "copies of all text messages" that he exchanged with Boob, Foster, and Parks Miller from August 4, 2014 to October 29, 2014. Lunsford moved to quash the subpoena. On November 21, 2016, a hearing on the motion to quash was held before Clinton County Court of Common Pleas Senior Judge J. Michael Williamson, specially presiding. After hearing arguments from both sides, Judge Williamson denied Lunsford's motion to quash. In his order, dated November 21, 2016 and filed on November 22, 2016, Judge Williamson said: "Because the Court anticipates it will be necessary to have additional hearings beyond that scheduled for tomorrow, this Order is stayed until the next hearing is scheduled in anticipation of Mr. Lunsford filing an appeal from this Order." Order, 11/21/16. Lunsford filed a notice of appeal on December 2, 2016 (No. 1982 MDA 2016).

A hearing on McClure's motions was held before Judge Williamson on November 22, 2016. At that hearing, the court incorporated the testimony of Maggie Miller, the former court reporter for Judge Lunsford, who had testified earlier that day in another case charging misconduct by prosecutors

and Judge Lunsford, **Commonwealth v. Grove**, CP-14-CR-873-2013.[9] **See** N.T., 11/22/16, at 14. In the **Grove** hearing, Miller testified, over a hearsay objection, that in April 2012, during the criminal trial of Randall Brooks, Judge Lunsford told her that Parks Miller was sending him messages about Brooks' case.

Also at the November 22 **McClure** hearing, Julie Lutz, a Centre County employee, testified that she gathered phone records in response to the Right to Know requests submitted by McClure's counsel. N.T., 11/22/16, at 57-61. Those records showed communications involving Judge Lunsford, Parks Miller, Boob, and Foster from August 4, 2014 (when jury selection in McClure's trial began) to mid-October, 2014 (shortly before McClure was sentenced). **Id.** at 61-66. Lutz testified that Judge Lunsford "turned in" his phone to the County in July of 2015 (about six months before he retired). **Id.** at 66. Elizabeth Dupuis, the County Solicitor, testified that an attorney for the county, Mary Lou Maierhofer, had a third-party agency try to

---

[9] **Grove** was another Centre County case in which the defendant was convicted in proceedings before Judge Lunsford. In an action under the Post Conviction Relief Act, the defendant sought relief from his sentence and a new trial on grounds that included due process violations relating to *ex parte* communications between the Centre County prosecutors and Judge Lunsford. The trial court ordered resentencing for reasons unrelated to the communications and denied the request for a new trial because the defendant failed to show how the alleged *ex parte* communications affected any aspect of his criminal case other than sentencing. On appeal, we affirmed. **Commonwealth v. Grove**, ___ A.3d ___, Nos. 358 MDA 2017 and 1158 MDA 2017, 2017 WL 3763408 (Pa. Super., Aug. 31, 2017).

download information from Judge Lunsford's phone,[10] but the download was unsuccessful because in late June of 2015 the phone was reset to factory settings. *Id.* at 75-76.

Joan Parsons, who was the judicial secretary for Judge Lunsford for nineteen years, testified that Judge Lunsford had a habit of taking his cell phone into court when proceedings were occurring, including in 2014. Parsons asked Judge Lunsford more than once to stop that habit. N.T., 11/22/16, at 86-87. She also testified that approximately two weeks after McClure's trial, Boob went to a concert with Judge Lunsford and others in Maryland. Judge Lunsford posted photos from that day on social media. *Id.* at 89-90.

Parks Miller testified that when McClure filed her October 23, 2014 motion to preserve evidence, the text messages from the time of McClure's trial were no longer on her phone. N.T., 11/22/16, at 93, 97-99. She did not know if they could have been recovered at that time. *Id.* at 98. Sometime between October 30, 2014 (when Judge Lunsford denied the motion to preserve evidence), and mid-January 2015, Parks Miller changed phones. *Id.* at 101.[11] With respect to the records obtained through the

_____

[10] At a later hearing date, Maierhofer explained that she made the effort to download the information from Lunsford's phone because the County had received litigation requests in other cases for preservation of that information. N.T., 12/9/16, at 22-23.

[11] In mid-January 2015, police seized Parks Miller's phone while investigating allegations that Parks Miller forged a judge's signature. N.T., 11/22/16, at
*(Footnote Continued Next Page)*

- 16 -

Right to Know Law that showed communications between Judge Lunsford and Parks Miller while McClure's case was before Judge Lunsford (including around the time that McClure filed motions in *limine* on August 21, 2014), Parks Miller said she did not know the subject of her conversations with Judge Lunsford, but she denied that they were related to McClure's case. *Id.* at 104-109, 110-111, 115, 116. Parks Miller also denied Maggie Miller's accusation that she sent Judge Lunsford messages about his rulings during the Randall Brooks trial. *Id.* at 112.

Parks Miller testified that she talked to ADA Foster after McClure filed her post-sentence motion documenting a large number of text messages between Judge Lunsford and Foster. *See* N.T., 11/22/16, at 109-10. Parks Miller said that Foster told her that those texts were about the medical condition of an assistant district attorney who had just resigned and about plans for a tailgate event. *Id.* at 126-29. Parks Miller said that when she talked to Foster, she looked at Foster's phone, but the messages were no longer on Foster's phone at that time. *Id.* at 123-24.

On December 2, 2016, McClure sent former Judge Lunsford another subpoena that sought testimony and records of his communications with members of the District Attorney's Office. The subpoena sought the same text messages as the first subpoena, and additionally:

*(Footnote Continued)* ————————

101. Parks Miller testified that the phone seized in January 2015 was not the same phone that she used at the time of McClure's trial. *Id.*

> (1) any and all correspondence, writings, text messages, emails, letters, summaries, statements, admissions, acknowledgments, or any other document or thing relating to any criminal cases where discussions occurred with the District Attorney's office, when the defendant[s] or defense counsel were not copied or included in that communication; (2) and any and all admissions, statements, acknowledgments, correspondence, writings or the like to the Judicial Misconduct Board or any other person or agency, relating to communications with the District Attorney's office where the defendant[s] or their attorney[s] were not included or copied on those communications.

Subpoena, 12/2/16. Lunsford moved to quash that subpoena, and, after hearing arguments, Judge Williamson denied that motion on December 9, 2016, but stayed his order to give Lunsford an opportunity to file an appeal. On December 22, 2016, Lunsford filed a notice of appeal from the December 9 order (No. 3 MDA 2017). He also filed a motion to certify the trial court's December 9 order as immediately appealable pursuant to the Interlocutory Appeal Act, 42 Pa.C.S. § 702(b), but the trial court denied that motion. This Court consolidated Lunsford's appeals of the November 21, 2016 and December 9, 2016 orders denying his motions to quash. *See* Order, 2/10/17.[12]

---

[12] On December 21, 2016, McClure filed an application to quash Judge Lunsford's appeal of the November 21, 2016 order. McClure claimed that Lunsford, as a non-party, lacked standing to appeal. Lunsford filed a timely response, and this Court issued an order denying the application to quash without prejudice to McClure's right to raise the issue again, if properly preserved, in her appellate brief or in a new application after the appeal had been assigned to a panel of this Court to decide the merits. Order, 2/23/17. McClure did not raise the issue in her brief or file a new application. Therefore, this issue is not presently before the Court.

Also on December 9, 2016, the trial court resumed its hearing on McClure's motion to preclude retrial and motion for discovery. At that hearing, Lutz brought phone records showing Judge Lunsford's communications with Parks Miller and Boob from May 30, 2014, to December 4, 2014.[13] The records showed that text messaging stopped as of October 24, 2014, one day after McClure filed her motion for discovery. N.T., 12/9/16, at 7-11. Lutz testified that she did not have the ability to access the content of the text messages. *Id.* at 11-12, 15-16.

Maierhofer, the attorney for the county who was given Lunsford's phone, brought to the hearing a report on an attempt to download the contents of Judge Lunsford's phone. Maierhofer testified that the county had Judge Lunsford's phone tested because "we had letters in other litigation on preserving information. So we needed to confirm or determine if there was information on there that would be relevant to those preservation letters." N.T., 12/9/16, at 22-23. When the county received the phone, it had been reset to factory settings. Maierhofer did not know who had reset the phone. The county first asked personnel in its information technology department to examine the phone, and when they found nothing, the county hired a forensic examiner to determine if any information remained on the phone. The examiner found nothing. *Id.* at 18-23, 29.

---

[13] These records thus covered a longer period of time than the records Lutz brought to the November 22, 2016 hearing.

ADA Foster also testified on December 9, 2016. She stated that her only role in the **McClure** case was to review transcripts of testimony that a defense expert, Dr. John Plunkett, had given in other trials. N.T., 12/9/16, at 34-35. Foster was present during parts of McClure's trial. **Id.** at 35. Foster did not remember when she switched phones. **Id.** at 40. She turned her phone in "several months" after McClure's trial, when ADAs received new phones and were asked to turn in their old ones. Foster gave the phone to First Assistant District Attorney Mark Smith and Parks Miller, and she did not know where the phone was currently. **Id.** at 40-41. Foster was not aware of any attempt to retrieve text messages from her phone. **Id.** at 41. She testified that she did not intentionally remove information from her phone. **Id.** at 56-7.

Foster asserted that she did not recall whether any of the texts Judge Lunsford sent her during the trial referenced the proceedings. N.T., 12/9/16, at 45. Foster testified that the texts she and Judge Lunsford exchanged discussed an ADA who was ill and resigned, places Foster and her fiancé might visit, and social events. **Id.** at 45-48, 50-51, 55. Foster said she never discussed the merits of any case with any judge. **Id.** at 49.

Parks Miller testified that she did not know the whereabouts of the phones she and Foster had at the time of the **McClure** trial. N.T., 12/9/16, at 117-18. Parks Miller did not try to download text messages from her phone. **Id.** at 119. On October 20, 2014, the day the defense filed a motion to strike mandatory minimum sentences in McClure's case, Parks

Miller exchanged nine text messages with Judge Lunsford; Parks Miller could not recall the subject of those messages, but testified they were not about McClure's case. *Id.* at 120-21. Two days later, the court sent out a scheduling order, and Parks Miller and Lunsford exchanged two text messages. On October 24, 2014, the day McClure's motion to preserve and produce evidence was sent to Judge Lunsford, there were three messages between Parks Miller and Judge Lunsford. After October 24, and through the end of December 2014, there were no text messages between Parks Miller and Lunsford. *Id.* at 123.

On December 22, 2016, Judge Williamson dismissed McClure's motion to preclude a retrial. The court said it was "deeply disturbed by the incredible number of text communications between Lunsford and members of the District Attorney's Office before and after [McClure]'s trial." Trial Ct. Op., 12/22/16, at 2. It noted, however, that "no evidence has been disclosed concerning the exact language of the extensive text messaging." *Id*. The lack of evidence was partly due to the fact that the relevant phones "were wiped clean, destroyed or otherwise made unavailable after the issue of the texting between Lunsford and the District Attorney's Office had been raised by defense counsel." *Id.* at 2-3. The court further noted that it had been unable to obtain Lunsford's testimony or cooperation from investigating agencies such as the Judicial Conduct Board. *Id.* at 3. The court concluded that McClure had failed to establish facts sufficient to warrant the dismissal of charges against her, but added: "[s]hould counsel for [McClure] be

successful in securing additional factual information through use of the discovery tools we have granted to him, we will be willing to readdress [McClure]'s motion prior to or following the trial . . . ." *Id.* at 4. With regard to McClure's allegations of social activities between Lunsford and members of the District Attorney's staff, the court found "nothing so egregious as to warrant dismissal of the charges against [McClure]." *Id.*

On December 30, 2016, the Commonwealth filed a motion for reconsideration of the opinion and order denying McClure's motion to preclude retrial, requesting that the court add language that McClure's motion was frivolous. On January 2, 2017, the trial court amended its December 22, 2016 order by adding the following:

> Notwithstanding the above discussion, we find [McClure's] Petition is not frivolous. [McClure] is advised that our Order dismissing her Motion to Preclude Retrial is immediately appealable as a collateral order pursuant to [Criminal] Rule 587(B)(6).

Order, 1/2/17.

On January 18, 2017, McClure filed a timely notice of appeal from the trial court's December 22, 2016 order (No. 145 MDA 2017). That same day, McClure filed numerous pre-trial motions in the trial court. The trial court scheduled a pretrial conference on "all Outstanding Issues" for 2:00 p.m. on January 25, 2017.

On January 24, 2017, the Commonwealth filed in the trial court a "Motion to Continue Hearings in Light of Pa.R.A.P. 1701 Stay." Believing that the trial court intended to deny that motion, at approximately 10:00

a.m. on January 25, 2017, the Commonwealth filed in this Court an "Emergency Motion to Enforce Appellate Stay under Pa.R.A.P. 1701." In that motion, the Commonwealth argued that McClure's appeal of the order denying her double jeopardy motion deprived the trial court of jurisdiction to rule on pre-trial motions. On January 25, this Court entered an interim order directing the trial court to docket its disposition of the Commonwealth's Motion to Continue Hearings by 1:00 p.m., and stating that if the trial court denied that motion, all proceedings in the trial court would be stayed pending our disposition of the Commonwealth's January 25 Emergency Motion to Enforce Appellate Stay. In response to our order, the trial court entered an order continuing the trial until jury selection on June 5, 2017. In the same order, the trial court also (1) vacated a prior order which had revoked McClure's bail based on a violation of the conditions of her bail;[14] and (2) denied a January 9, 2017 request by the Commonwealth for

---

[14] On August 25, 2016, Judge Ruest had granted McClure bail with conditions, including that McClure could not supervise minors other than her own children. On November 7, 2016, the Commonwealth filed an emergency motion to revoke McClure's bail, alleging that McClure had violated the terms of her release by supervising children. After a hearing on November 15, 2016, Judge Williamson revoked McClure's bail. Judge Lunsford filed his notice of appeal on December 2, 2016; on December 19, McClure filed a motion for bail pending that appeal. It was the November 15, 2016 bail-revocation order that the trial court (Judge Williamson) vacated in its January 25, 2017 order.

the court to inquire into a "conflict issue" involving one of McClure's attorneys, Sean P. McGraw.[15]

After the trial court filed its January 25, 2017 order, the Commonwealth filed a "Second Emergency Motion to Act on Interim Order and Vacate the Trial Court Granting Bail for Lack of Jurisdiction."[16] On February 9, 2017, this Court issued an order (1) staying the proceedings in the trial court pending disposition of McClure's appeal at 145 MDA 2017 and Lunsford's appeals at 1982 MDA 2016 and 3 MDA 2017; (2) vacating the scheduling dates set forth in the trial court's January 25, 2017 order; (3) denying the Commonwealth's request that we vacate the trial court's disposition of its request to remove Attorney McGraw; and (4) vacating the trial court's grant of bail in its January 25, 2017 order.[17] We further directed

---

[15] The "conflict issue" was not raised by motion; it was raised in New Matter in the Commonwealth's response to McClure's motion for bail pending Judge Lunsford's appeal. McGraw had worked at the Centre County District Attorney's Office from January 2010 through March 2013, and the investigation of McClure that led to the filing of criminal charges was ongoing while McGraw was working there. The Commonwealth argued that because of this fact, the Rules of Professional Conduct prohibited McGraw from representing McClure. McGraw responded that he was not precluded from representing McClure because he had no involvement in the **McClure** case while he was at the District Attorney's office.

[16] After we gave McClure time to respond to the Commonwealth's motion, the Commonwealth filed another motion seeking clarification on the issue of bail. We then entered another interim order stating that the trial court's decision to reinstate a prior bail order was stayed pending our disposition of the Commonwealth's emergency motions.

[17] On February 13, 2017, McClure filed an application for reinstatement of bail in this Court. We deferred the application to the trial court. Initially,
*(Footnote Continued Next Page)*

the trial court to forward the certified record to this Court and arranged for expedition of the case in this Court.

On August 16, 2017, the Disciplinary Board of the Supreme Court of Pennsylvania made public a petition for discipline it had filed against Parks Miller on February 22, 2017. The petition charges Parks Miller with communicating *ex parte* with Judge Lunsford (and another judge) in numerous cases and making false statements in connection with the disciplinary matter. With regard to McClure's case, the petition charges Parks Miller with making false statements and failing to correct false statements by Judge Lunsford during the October 30, 2014 hearing on McClure's motion for recusal.[18]

*(Footnote Continued)* —————————

the trial court requested that this Court reinstate McClure's bail. The trial court stated, "[w]e are convinced that the conditions established by Judge Ruest and the period of additional incarceration received by Defendant for her violation of [the bail] conditions are sufficient pending what appears to be possibly a lengthy delay in bringing this matter to a conclusion." This Court denied the trial court's request and ordered the court to dispose of McClure's application in accordance with Pa.R.Crim.P. 523 (criteria to be considered in determining bail) and Pa.R.Crim.P. 520(A) (requiring reasons on the record for refusal of bail). On March 8, the trial court issued an order addressing all of the Rule 523 criteria, as well as evidence that McClure violated other conditions of her bail by committing harassment and by failing to notify the Commonwealth of changes in her address. In that order, the trial court denied McClure's application for bail.

[18] The petition also makes allegations regarding Parks Miller's use of a fake Facebook profile to obtain information about McClure and her sons. The Facebook profile is another ground raised by McClure in her double jeopardy motion. It does not involve Judge Lunsford.

On August 29, 2017, McClure filed an application for relief in this Court, citing the petition for discipline. McClure's application contained (1) a motion to recuse the Centre County District Attorney's Office [19] from prosecuting this matter; (2) a motion for an order remanding this case "with a direction to the trial court that a negative inference is warranted regarding the destruction of evidence, that a new trial be barred and judgment of acquittal entered"; and (3) a motion for an order granting McClure permission to apply for reconsideration of the November 15, 2016 order revoking her bail. The Commonwealth filed a response on September 11, 2017, in which it denied McClure's allegations and opposed the relief she sought.

### Nos. 1982 MDA 2016 and 3 MDA 2017 (The Appeals by Former Judge Lunsford)

We begin by addressing the consolidated appeals filed by former Judge Lunsford from the orders denying his motions to quash McClure's subpoenas.

In its order dated November 21, 2016, the trial court declined to quash a subpoena that directed Lunsford to testify at the hearing on

---

[19] It is not clear whether McClure seeks recusal of District Attorney Parks Miller only or of the entire Centre County District Attorney's Office. In her motion, McClure alleges that Parks Miller has a conflict of interest that "mandates the immediate recusal of the **prosecutor** in this case." McClure's App. for Relief Pursuant to R. 123, 8/29/17, at ¶ 32 (emphasis added). In her prayer for relief, McClure "moves the court for an order recusing the Centre County District Attorney's **office** from prosecuting this matter any further." **Id.** (emphasis added). We note that throughout these proceedings, the Commonwealth has been represented by special counsel Bruce Castor, in addition to personnel of the District Attorney's Office.

McClure's preclusion motion and to produce copies of all of his text messages with Parks Miller, Boob, and Foster between August 4, 2014 and October 29, 2014. In its order dated December 9, 2016, the trial court declined to quash a second subpoena that again directed Lunsford to testify, again directed him to produce the text messages, and further directed him to produce other correspondence and similar documents relating to *ex parte* communications with the DA's office regarding "any criminal cases where [such] discussions occurred" and "any and all admissions, statements, acknowledgments, correspondence, writings or the like to the Judicial Misconduct Board or any other person or agency" relating to *ex parte* communications with the DA's office. In his brief, Lunsford raises the following issue:

> Whether subpoenas upon a retired judge seeking to probe his decision-making while presiding over a 2014 trial must be quashed based upon firmly rooted privileges and judicial immunity that protect members of the judiciary from compelled testimony regarding adjudicative acts.

Lunsford's Brief at 6.

"Typically, the standard of review regarding a motion to quash a subpoena is whether the trial court abused its discretion." ***Leber v. Stretton***, 928 A.2d 262, 266 (Pa. Super. 2007), ***appeal denied***, 945 A.2d 172 (Pa. 2008). However, where the issue raised is purely a question of law, "this Court's standard of review is *de novo* and our scope of review is plenary." ***Id.***

**Jurisdiction**

*Collateral Order*

Before reaching the merits of Lunsford's appeals, we first address this Court's jurisdiction to hear them. Lunsford contends that the orders denying his motions to quash are collateral orders appealable under Pa.R.A.P. 313(b). McClure does not challenge our jurisdiction in her brief, but we may address the issue *sua sponte*. **See In re W.H.**, 25 A.3d 330, 334 (Pa. Super.), **appeal denied**, 24 A.3d 364 (Pa. 2011).

"The question of whether an order is appealable under Rule 313 is a question of law. Accordingly, our standard of review is de novo and our scope of review is plenary." **K.C. v. L.A.**, 128 A.3d 774, 778 (Pa. 2015) (citations omitted). As the Supreme Court stated in **K.C.**:

> Otherwise known as the collateral order doctrine, [Appellate] Rule 313(b) provides that an interlocutory order is collateral and, therefore, immediately appealable, if it is: "[1] separable from and collateral to the main cause of action where [2] the right involved is too important to be denied review and [3] the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."

**Id.** at 777 (quoting Pa.R.A.P. 313(b)).

Discovery orders are generally interlocutory and not immediately appealable; however, discovery orders are immediately appealable if they satisfy all three requirements of Rule 313. **Ben v. Schwartz**, 729 A.2d 547, 551-52 (Pa. 1999). In **Leber**, one of the parties to a defamation lawsuit sought to compel testimony from two judges whose conduct was the subject matter of the alleged defamation. 928 A.2d at 263-64. The judges moved

to quash to the subpoenas, asserting that their testimony was barred by the deliberative process privilege, and the trial court denied those motions. *Id.* at 264. In concluding that the orders denying the judges' motions were appealable, we explained:

> The question of whether [the judges] can be compelled to testify regarding decisions they have rendered would not require an analysis of underlying defamation claims. Furthermore, the deliberative process privilege has been determined to meet the importance prong of Rule 313. In addition, the collateral order exception uniformly has been applied when an appellant has asserted the existence of a privilege. Moreover, once disclosed, the confidentiality of potentially privileged information would be irreparably lost and there would be no effective means of review after final judgment.

*Id.* at 265-66 (citations omitted). The subpoenas issued to former Judge Lunsford seek hearing testimony, rather than pretrial discovery, but we find that the principles stated in *Leber* and similar cases apply here. Under these decisions, the orders denying Lunsford's motions to quash the subpoenas issued by McClure are collateral orders.

Determining whether Lunsford can be compelled to testify and produce documents regarding his *ex parte* communications does not require an analysis of the substantive issues regarding the assault and endangerment charges against McClure, or of the prosecutorial misconduct charges that McClure makes in her dismissal motion; rather, Lunsford's appeal turns on resolution of collateral issues regarding judicial privileges. *See Leber*, 928 A.2d at 265-66. Further, to the extent the deliberative process privilege protects the judicial communications about which McClure inquires, it

- 29 -

embodies a right "too important to be denied review." *See* Pa.R.A.P. 313; *see Leber*, 928 A.2d at 266 ("the deliberative process privilege has been determined to meet the importance prong of Rule 313"). As we discuss below, the privilege at issue here has long been widely recognized as necessary to protect the integrity of the judicial system. Finally, if review is postponed, "the confidentiality of potentially privileged information would be irreparably lost," for, once the purportedly privileged materials are released, Lunsford would have no effective means of obtaining review. *See Leber*, 928 A.2d at 266. Accordingly, we conclude that these appeals are within our jurisdiction.

## *Rule 1701*

Though we have appellate jurisdiction, we conclude that the trial court lacked jurisdiction to enter its order dated December 9, 2016, which enforced McClure's second subpoena addressed to Lunsford and is the subject of Lunsford's second appeal (No. 3 MDA 2017). We therefore must vacate that order.

McClure served her second subpoena on Lunsford on December 2, 2016, the same day that Lunsford appealed from the trial court's November 21, 2016 order declining to quash McClure's first subpoena. To a large extent, McClure's second subpoena sought the exact same evidence from Lunsford that she sought in the first subpoena — copies of text messages,

and testimony from Lunsford.[20] At the time of the trial court's December 9, 2016 enforcement order, Lunsford's December 2, 2016 appeal was pending in this Court.

As we explain in greater detail in our discussion of jurisdiction regarding McClure's appeal (No. 145 MDA 2017) at the end of this opinion, Rule 1701(a) of the Rules of Appellate Procedure divests a trial court of jurisdiction to proceed in a case once an appeal has been filed. Rule 1701(c) contains an exception permitting the court to proceed with the remaining matters before it when the appeal pertains to a collateral issue in the case, but only if that collateral issue is unrelated to and not intertwined with the matters on which the trial court intends to proceed. Here, the trial court proceeded to resolve a motion to quash a second subpoena to Lunsford that presented privilege issues that were identical to those that the court had decided in its November 21, 2016 order and that already were before this Court for resolution. Because these issues were exactly the same, there can be no question that resolution of Lunsford's pending first appeal was closely intertwined with resolution of Lunsford's motion to quash McClure's second subpoena. Accordingly, under Rule 1701, the trial court was divested of

_____

[20] Issuance of the second subpoena while Lunsford's first appeal was (or was about to be) pending itself raises jurisdictional issues that we need not address here. The subpoena told Lunsford: "You are ordered by the court to come to the Centre County Courthouse . . . to testify on behalf of Jalene R. McClure in the above captioned case and to remain until excused"; it further ordered him to bring documents. The subpoena thus was a court order addressed to Lunsford that directed him to do the same things that Lunsford's pending appeal to this Court sought to prevent.

jurisdiction to address the issues presented by McClure's second subpoena until this Court decided Lunsford's appeal and remanded the case. By entering the December 9, 2016 order anyway, the trial court improperly insisted on enforcing its own view of Lunsford's claim of privilege, despite the fact that this very issue was under review by this Court.

The fact that McClure's second subpoena to Lunsford also sought additional documents not requested in her first subpoena does not change this analysis. Even with respect to those additional documents, the issue that controlled whether the subpoena could be enforced was the privilege issue that already was before this Court for resolution. It was error for the trial court to resolve this question in the context of the second subpoena before this Court decided Lunsford's first appeal.

Because the trial court lacked jurisdiction to issue its December 9, 2016 order regarding McClure's second subpoena, we vacate that order, making it unnecessary to further address Lunsford's appeal from it at No. 3 MDA 2017.

**Lunsford's Claim of Privilege**

In declining to quash the subpoenas that McClure issued to former Judge Lunsford, Judge Williamson explained his decision as follows:

> [O]ur decision to refuse to quash the subpoenas against Lunsford was based upon our belief that the Defendants in these cases[21] are entitled to present their allegation that they were

---

[21] At around the same time as McClure subpoenaed former Judge Lunsford in her case, a similar subpoena was issued to Lunsford in the **Grove** case. *(Footnote Continued Next Page)*

denied due process of law.  While we acknowledge the general princip[les] set forth by Lunsford in his original motions, we believe these cases are so unique as to remove them from general constitutional principles regarding the privileges of the judiciary.  Indeed, an argument could well be made that Lunsford has waived any privilege with regard to the issue of his alleged texting with the District Attorney's Office by virtue of his addressing the issue in the 1925(a) Statement he filed in the original *McClure* appeal.

Trial Ct. Op., 2/23/17, at 2-3.  The court thus appeared to recognize that the communications at issue are subject to "privileges of the judiciary," but to hold that "unique" facts of this case made those privileges inapplicable or that the privileges were waived by Judge Lunsford.

In his appeal, Lunsford argues that the trial court erred by "disregarding firmly rooted privileges and immunities that prohibit compelled testimony of judicial officers concerning their judicial decisions."  Lunsford's Brief at 21 (some capitalization removed).  Lunsford contends that the trial court's reasons for denying his motions to quash were insufficient to overcome these privileges and immunities.  He also disputes the trial court's suggestion that he waived any privilege.

Our courts have long recognized that judges may not be compelled to testify regarding their thought processes in reaching official judgments.  In *Leber*, we recounted:

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

Judge Williamson declined to quash that subpoena too, and Lunsford appealed his decision in *Grove* to this Court.  Judge Williamson issued a single Rule 1925(a) opinion explaining his decisions regarding the subpoenas in both the *McClure* and *Grove* cases.  We ultimately dismissed Lunsford's appeal in the *Grove* case as moot.

- 33 -

A century ago, the United States Supreme Court declared it "wholly improper" to subject decision makers to the rigors of an "elaborate cross-examination with regard to the operation of their minds." ***Chicago, Burlington, & Quincy Railway Co. v. Babcock***, 204 U.S. 585, 593 . . . (1907). Therein, the Court declared:

> Jurymen cannot be called, even on a motion for a new trial in the same case, to testify to the motives and influences that led to their verdict. . . . Similar reasoning was applied to a judge. . . . All the often-repeated reasons for the rule as to jurymen apply with redoubled force to the attempt, by exhibiting on cross-examination the confusion of the members' minds, to attack in another proceeding the judgment of a lay tribunal, which is intended, so far as may be, to be final, notwithstanding mistakes of fact or law.

***Id.*** (citations omitted).[22]

A few decades later, the United States Supreme Court created a concept known as "the deliberative process privilege." ***See United States v. Morgan***, 313 U.S. 409 . . . (1941). . . .

Since ***Morgan***, a number of jurisdictions, including the Third Circuit, have utilized the rationale of that case to prohibit judges from testifying under oath.

***Leber***, 928 A.2d at 267-68; ***see also Fayerweather v. Ritch***, 195 U.S. 276, 306-07 (1904) (stating that subsequent oral testimony of trial court judge about reasoning for his decision was inadmissible and that a judgment "ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision").

In ***Leber***, we explained that this "deliberative process privilege" protects "confidential deliberations of law, or policymaking that reflect

---

[22] ***Babcock*** dealt with testimony by members of a state adjudicatory board.

opinions, recommendations or advice." **Leber**, 928 A.2d at 268 (quoting

**Commonwealth v. Vartan**, 733 A.2d 1258, 1265 (Pa. 1999) (plurality

opinion)).   Though this privilege has been recognized in a number of

jurisdictions, there is little Pennsylvania law on the subject.[23]  We pointed

out in **Leber** that the privilege "benefits the public, and not the officials who

assert that privilege," 928 A.2d at 268 (discussing **Vartan**), and several

courts have emphasized the benefit to the public of maintaining the

confidentiality of judicial deliberations by erecting a shield against outside

_____

[23] The status of this privilege in the Pennsylvania Supreme Court has been less than clear, but nothing in that Court's decisions causes us to doubt the privilege's validity.  In **Vartan**, an action in which contractors sought testimony from the Chief Justice of Pennsylvania regarding construction of a court building, a plurality of the Court applied the privilege to shield the Chief Justice from being compelled to give that testimony.  However, in a later case dealing with administrators' assertion of the privilege, the Court stated that it had "not definitively adopted" the privilege. **See LaValle v. Office of Gen. Counsel of Com.**, 769 A.2d 449, 457 (Pa. 2001).  In **Kennedy v. Upper Milford Twp. Zoning Hearing Bd.**, 834 A.2d 1104, 1119 n.28 (Pa. 2003), the Court, citing **Vartan**, stated:  "Quasi-judicial deliberations are widely considered to be protected by a legal privilege of ancient origin and recent interest. Termed 'judicial' or 'deliberative,' the privilege is closely related to the executive privilege that protects the decision-making process of the chief executive from compelled disclosure." The Court said it had been "unnecessary to expressly endorse" the privilege in **LaValle**. **Id.**  In **Tribune-Review Publ'g Co. v. Dep't of Cmty. & Econ. Dev.**, 859 A.2d 1261, 1266 n.2, 1269 (Pa. 2004), while again noting that it had not yet formally adopted the privilege, the Court stated that it "agree[s] with the principles we articulated in **Vartan**."  Most recently, in **In re Interbranch Comm'n on Juvenile Justice**, 988 A.2d 1269, 1277-78 (Pa. 2010), a plurality of the Court, without qualification or noted dissent, cited **Vartan** in stating, "Under the deliberative process privilege, government officials may refuse to testify and may withhold documents containing 'confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice.'"  That case dealt with a subpoena for testimony and materials from Judicial Conduct Board personnel during an investigation of the Luzerne County juvenile justice system.

inquiry and influence. *See, e.g.*, *United States v. Dowdy*, 440 F. Supp. 894, 896 (W.D. Va. 1977) ("Should a judge be vulnerable to subpoena as to the basis of every action taken by him, the judiciary would be open to frivolous attacks upon its dignity and integrity, and . . . interruption of its ordinary and proper functioning" (internal quotation marks and citations omitted)); *In re Enforcement of Subpoena*, 972 N.E.2d 1022, 1029 (Mass. 2012) ("In addition to ensuring the finality of judgments, protecting judges from the post hoc probing of their mental processes also ensures the integrity and quality of judicial decision-making").

*Leber* is the only precedential appellate decision in Pennsylvania that has applied the judicial deliberative process privilege, but we find it instructive here. We held in *Leber* that "a judicial officer may not be compelled to testify, and his or her deliberative process may not be inquired into, when a plaintiff in a defamation case challenges the truthfulness of statements made by a defendant where the subject matter of the alleged defamation had been judicial conduct." 928 A.2d at 270 (footnote omitted). Leber was the District Attorney of Tioga County, and he brought defamation suits against another attorney (Samuel Stretton) and a newspaper. Leber alleged that Stretton "defamed him by stating he was unethical because of statements [Leber] had publicly made concerning [two judges,]" and that the newspaper defamed him by printing Stretton's comments. *Id.* at 263-64. The statements leading to the defamation suits related to the judges' dismissal of proceedings after finding that a *prima facie* case had not been

- 36 -

established. *Id.* at 264. Leber served the judges with subpoenas to testify, and sought to ask them why they found there was no *prima facie* case. *Id.* at 264, 266. We concluded that this questioning was prohibited, stating:

> [Leber's] desire to question [the judges] regarding events which occurred in the course of their judicial duty not only will take time away from their role as district judges but also necessitates delving into the thought processes they utilized in those positions. As a matter of public policy, we find this type of questioning unacceptable and hold that judicial officers are immune from testifying as to information surrounding their conduct during an official proceeding.

*Id.* at 270.

Under *Leber*, outsiders may not inquire into confidential deliberations relating to judicial decisions. 928 A.2d at 268. Here, McClure seeks testimony relating to communications of former Judge Lunsford at the time of her trial so that she can explore whether outside factors influenced her conviction. She also seeks production of some of those communications — particularly, the text messages between Lunsford and the prosecutors. We therefore must examine whether the privilege extends to the information that McClure seeks and, if so, whether the trial court erred in holding that McClure may obtain it anyway. We conclude that: (1) the privilege does not apply to McClure's request for copies of any *ex parte* communications between prosecutors and Judge Lunsford, but it does apply to inquiries about Judge Lunsford's decision-making during McClure's trial; (2) to the extent the privilege is applicable, it is absolute and therefore may not be overridden; (3) Judge Lunsford did not waive the privilege; and (4) the trial

court could properly exercise discretion in allowing McClure to obtain unprivileged information from Lunsford, so long as it did so with appropriate attention to the policies underlying the privilege.

*Application of the Privilege to McClure's Requests*

McClure's subpoena directs former Judge Lunsford to produce copies of any *ex parte* communications between him and the Centre County prosecutors at the time of this case. She also seeks to have him testify about such communications.[24] We hold that the privilege does not protect such documents or information from disclosure.

As noted, the privilege is designed to protect "confidential deliberations of law, or policymaking that reflect opinions, recommendations or advice." **Leber**, 928 A.2d at 268. Accordingly, courts have recognized that the privilege is not applicable where the inquiry seeks other types of information, although they have varied in describing what other types of information may be sought.[25] We suggested in *dicta* in **Leber** that judges

---

[24] Because it appears that the text messages and other communications no longer exist, we anticipate that the main practical effect of our decision will be with respect to the request for testimony. No offer of proof appears in the record, but we assume that such testimony would include questioning about whether and when *ex parte* communications took place and their subject matter.

[25] **See, e.g.**, **Washington v. Strickland**, 693 F.2d 1243, 1263 (5th Cir. 1982) (holding that judge may testify regarding "personal knowledge of historical facts or expert opinion[,]" but "may not be asked to testify about his mental processes in reaching a judicial decision"), **rev'd on other grounds**, 466 U.S. 668 (1984); **Brinkerhoff v. Home Tr. & Sav. Bank**, 205 P. 779, 784 (Kan. 1921) ("Like any other witness [a judge] was

*(Footnote Continued Next Page)*

may be called to testify in matters that do not "implicate the judicial officer's thought processes in his or her professional capacity," such as matters where a judge merely happened to be a fact witness. 928 A.2d at 270 n.12.

In seeking copies of any *ex parte* communications, McClure does not seek to intrude into deliberations that were part of proper and legitimate decision-making, but instead she seeks to find out whether there were outside influences that might have tainted her criminal trial. Courts around the country generally agree that material *ex parte* communications are improper in any case. They can extraneously influence decisions by introducing information outside the court record, and can do so unfairly because the communications are not shared with all participants. ***See, e.g.***, ***Rho-Sigma, Inc. v. Int'l Control & Measurements, Corp.***, 691 So. 2d 16, 17 (Fla. Dist. Ct. App. 1997) (per curiam); ***Matter of Marek***, 609

*(Footnote Continued)* ———————

competent to give testimony not inconsistent with the record as to the identity of the matters actually litigated in the former action[,]" but the judge's "secret and unexpressed reasons which actuated him in making the decision are not admissible any more than are those of a jury"); ***Burr v. Woodrow***, 64 Ky. (1 Bush) 602, 605–06 (Ky. 1866) (holding that while inquiry into reasons that influenced the court was prohibited, judge could be asked what happened at trial); ***State ex rel. Childs v. Hayward***, 248 A.2d 88, 90 (N.H. 1968) ("[N]o magistrate should be subjected to interrogation with respect to his mental processes or the reasons for his decision, nor should he be subjected to interrogation with respect to the evidence presented before him when there is an existing record thereof. This does not mean, however, that judicial officers, not presiding over courts of record, are exempt from giving testimony as to what evidence was presented before them, when no record of such evidence was made"); ***State v. Donovan***, 30 A.2d 421, 427 (N.J. 1943) (holding that judges are not immune from process, counsel should call judges only if they cannot obtain factual information from another source, and judges are not required to divulge reasons for their decisions).

N.E.2d 419, 420 (Ind. 1993) (per curiam); ***In re Conduct of Burrows***, 629 P.2d 820, 826 (Or. 1981) (*en banc*). *Ex parte* communications thus are widely forbidden as a matter of procedure, due process, and ethics, as they deprive a litigant of the right to a fair trial before an impartial tribunal. ***See, e.g.***, ***United States v. Barnwell***, 477 F.3d 844, 854 (6th Cir. 2007); ***Yohn v. Love***, 76 F.3d 508, 516-17 (3d Cir. 1996); ***Abdygapparova v. State***, 243 S.W.3d 191, 208-10 (Tex. App. 2007).[26] In Pennsylvania, judges are prohibited from receiving *ex parte* communications by the Code of Judicial Conduct,[27] and lawyers are prohibited from sending *ex parte* communications

---

[26] The Restatement (Third) of the Law Governing Lawyers § 113 (Am. Law Inst. 2000) states in Comment *b*:

> Ex parte communication with a judicial official before whom a matter is pending violates the right of the opposing party to a fair hearing and may constitute a violation of the due-process rights of the absent party. A communication made secretly may not withstand scrutiny. Ex parte communication also threatens to embarrass the parties' relationship with the judicial officer, requiring the officer either improperly to acquiesce in the conduct or to make a censorious response.

[27] Rule 2.9(A) of the Code, part of Canon 2 ("A Judge Shall Perform the Duties of Judicial Office Impartially . . ."), states:

> A judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter, except as follows:
>
> (1) When circumstances require it, *ex parte* communication for scheduling, administrative, or emergency purposes, which does not address substantive matters, is permitted . . . .

*(Footnote Continued Next Page)*

to a judge by the Rules of Professional Conduct.[28]  Accordingly, in seeking to

determine whether such forbidden communications took place in this case,

McClure is not invading a part of the judicial process that deserves privileged

protection.

_(Footnote Continued)_ ————————————

    (2)  A judge may obtain the written advice of a disinterested expert on the law applicable to a proceeding before the judge, if the judge gives advance notice to the parties of the person to be consulted and the subject matter of the advice to be solicited, and affords the parties a reasonable opportunity to object and respond to the notice and to the advice received.

    (3)  A judge may consult with court staff and court officials . . ., or with other judges, provided the judge makes reasonable efforts to avoid receiving factual information that is not part of the record, and does not abrogate the responsibility to decide the matter personally.

    (4)  A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to settle matters pending before the judge.

    (5)  A judge may initiate, permit, or consider any _ex parte_ communication when expressly authorized by law to do so.

207 Pa. Code Rule 2.9(A); **see, e.g.**, **In re Larsen**, 616 A.2d 529 (Pa. 1992), **cert. denied**, 510 U.S. 815 (1993).

[28] Rule 3.5 states, in relevant part:

    A lawyer shall not:

        (a)  seek to influence a judge, juror, prospective juror or other official by means prohibited by law;

        (b)  communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order; . . . .

204 Pa. Code §81.4, Rule 3.5.

For this reason, the Supreme Judicial Court of Massachusetts held in *In re Enforcement of Subpoena* that the judicial deliberative process privilege does not bar discovery about *ex parte* communications. In that case, the Massachusetts Commission on Judicial Conduct summoned a judge accused of misconduct to a deposition. 972 N.E.2d at 1026. The subpoena also requested numerous documents, including, "Any notes, notebooks, bench books, diaries, memoranda, recordation or other written recollections" of certain cases. *Id.* at 1026-27. In holding that the privilege did not prohibit discovery about the *ex parte* communications, the court stated:

> Nor does the privilege apply to inquiries into whether a judge was subjected to improper extraneous influences or ex parte communications during the deliberative process. By definition, such influences and communications lie outside the protected sphere of the judge's internal deliberations. As in jury deliberations, inquiry into extraneous influences does not probe into subjective mental processes, and the existence of such influences often can be objectively ascertained, and many times the evidence can be corroborated.

972 N.E.2d at 1033 (footnote, quotation marks, brackets, and citation omitted). The court held that although "so much of the subpoena as relates to the judge's internal thought processes and deliberative communications, memorialized in notes, diaries, or otherwise, must be quashed," the remaining portions of the subpoena were not subject to objections under the privilege. *Id.* at 1036.

In the absence of any reported Pennsylvania decisions discussing this issue, we find the Massachusetts decision persuasive. The privilege should not shield judicial conduct that is not supposed to be part of the judicial

- 42 -

process in the first place. We therefore hold that the privilege does not shield *ex parte* communications, and that McClure's request in her subpoena for copies of such communications and testimony about them therefore is permissible. Consistent with the Massachusetts decision, however, we also hold that any inquiry into former Judge Lunsford's thought processes and deliberative processes during McClure's trial is barred under the privilege, and McClure may not ask about such matters in any testimony by former Judge Lunsford pursuant to her subpoena; she thus may not ask Judge Lunsford why he rendered particular decisions in her case or whether those decisions were influenced by specified information.

In concluding that the *ex parte* communications are not protected by the privilege, we are guided by the Pennsylvania Supreme Court's teaching that the scope of a privilege should mirror its purpose. In **Schanne v. Addis**, 121 A.3d 942 (Pa. 2015), the Court considered a privilege closely related to that at issue here: the privilege applicable to statements made in the course of a judicial proceeding. The Court explained that this privilege is absolute and "provid[es] immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought," whether the statements are made "by a party, a witness, an attorney, or a judge." 121 A.3d at 947. The privilege therefore "serves an essential function in guaranteeing access to the courts and permitting the free articulation and resolution of legal claims." **Id.** But, the Court explained, while the scope of this privilege has been extended to a "variety

of scenarios connected with the sound administration of justice as that term is broadly understood," "it has also been made subject to limitations where the administration of justice is not likely to be substantially affected." **Id.** at 948-49. Thus, the privilege has been held not to apply to statements made during "an extrajudicial act that occurred outside of the regular course of the proceedings" because affording privileged status in that situation "would not advance the privilege's underlying policy aims." **Id.** at 948. So too here extending the deliberative process privilege to *ex parte* communications would not serve its policy objective of protecting legitimate judicial decision-making.

We also find instructive Pennsylvania authorities relating to obtaining information from jurors.[29] Rule 606 of the Pennsylvania Rule of Evidence ("Juror's Competency as a Witness") provides as follows in subpart (b)(1):

> *(1) Prohibited Testimony or Other Evidence*. During an inquiry into the validity of a verdict, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

---

[29] The U.S. Supreme Court recognized that there are similar reasons for preventing judges and jurors from testifying about the motivations for their decisions. **See Babcock**, 204 U.S. at 593.

Pa.R.E. 606(b)(1).[30]  This Court has explained the rationale behind this "no impeachment rule":

> [We] cannot accept the statement of jurors as to what transpired in the jury room as to the propriety or impropriety of a juror's conduct.  To do so, would destroy the security of all verdicts and go far toward weakening the efficacy of trial by jury, so well grounded in our system of jurisprudence.  Jurors cannot impeach their own verdict.  Their deliberations are secret and their inviolability must be closely guarded.  Only in clear cases [of] improper conduct by jurors, evidenced by competent testimony, should a verdict, which is fully supported by the evidence, be set aside and a new trial granted.

*Commonwealth v. Messersmith*, 860 A.2d 1078, 1084–85 (Pa. Super. 2004) (quoting *Commonwealth v. Pierce*, 309 A.2d 371, 372 (Pa. 1973)), *appeal denied*, 878 A.2d 863 (Pa. 2005).

But Rule 606(b)(2) contains exceptions to this prohibition:

> *(2) Exceptions*.  A juror may testify about whether:
>
> (A) prejudicial information not of record and beyond common knowledge and experience was improperly brought to the jury's attention; or
>
> (B) an outside influence was improperly brought to bear on any juror.

---

[30] The Rules of Evidence do not address whether a judge may testify about his decision-making process in a previous case or about any extraneous influences on his decision.  Rule 605 ("Judge's Competency as a Witness") provides only that a judge may not be a witness at a proceeding at which he presides.  The Rules of Judicial Administration provide that in order to call a judge to testify as a character witness, a party must "demonstrat[e] that the character testimony to be given by the witness will not be merely cumulative and that the rights of petitioner will be unduly prejudiced by the application of the general rule prohibiting the appearance of judicial officers as character witnesses."  *See* Pa. R.J.A. 1701(c)(3).  The Rules of Judicial Administration do not address other types of testimony by judges.

Pa.R.E. 606(b)(2). We have explained:

> Th[is] exception allows post trial testimony of extraneous influences which might have affected (prejudiced) the jury during their deliberations. Extraneous information has been defined as information that was not provided in open court or vocalized by the trial court via instructions. Under the exception to the no impeachment rule, a juror may testify only as to the existence of the outside influence, but not as to the effect this outside influence may have had on deliberations. Under no circumstances may jurors testify about their subjective reasoning processes.

**Messersmith**, 860 A.2d at 1085 (internal quotation marks and citations omitted).

Just as Pennsylvania law precludes inquiry into the deliberations of jurors except to determine whether they were subjected to extraneous information, so too does our law preclude any similar inquiry into a judge's deliberations, but subject to a similar exception regarding extraneous information. As is true for jurors under Rule 606, a judge may be questioned about the existence of an outside influence, but not about his or her subjective reasoning processes or the effect of any influence on his or her deliberations or decision.

### *Absolute or Qualified Privilege*

McClure's subpoena does not state whether the testimony she seeks from Lunsford would be limited to questions about *ex parte* communications or whether it would also delve into Lunsford's reasoning for his decisions and similar deliberative matters. While the former is not privileged, the latter is. Therefore, because some of the requested testimony may be privileged, we

need to address the trial court's holding that "unique" circumstances of this case may "remove [it] from general constitutional principles regarding the privileges of the judiciary." Trial Ct. Op., 2/23/17, at 2. Though unclear, it appears from this statement that the trial court viewed the privilege's protection against inquiry into judicial deliberations as qualified (that is, subject to being overridden on appropriate facts), rather than absolute. If so, we disagree.

Pennsylvania appellate courts have not directly reached this question. In **Vartan**, the Supreme Court plurality discussed the judicial deliberative process privilege in the context of an "absolute immunity." 733 A.2d at 1265. Our strong language in **Leber** suggests that we too viewed the privilege as absolute. **See Leber**, 928 A.2d 270 (finding, as a matter of public policy, that questioning judges regarding their thought process is "unacceptable" and holding "that judicial officers are immune from testifying as to information surrounding their conduct during an official proceeding"). In **Leber**, we did not state any circumstances under which the privilege would be qualified.

Courts outside Pennsylvania are in disagreement. Some have held that the privilege is qualified, and may be overcome in extreme cases. For example, in **Matter of Certain Complaints Under Investigation by an Investigating Committee of the Judicial Council of the Eleventh Circuit (Williams v. Mercer)**, 783 F.2d 1488 (11th Cir.), **cert. denied**, 477 U.S. 904 (1986), a case dealing with communications between a judge

and his staff, the court reasoned that the privilege "must be harmonized with the principle that the public has a right to every man's evidence" and that disclosure of the communications therefore could be compelled if "the investigating party can demonstrate that its need for the materials is sufficiently great to overcome the privilege." 783 F.2d at 1521-22 (internal quotation marks, ellipses, and citation omitted). The court continued:

> To meet this burden, the investigating party can attempt to show the importance of the inquiry for which the privileged information is sought; the relevance of that information to its inquiry; and the difficulty of obtaining the desired information through alternative means. The court then must weigh the investigating party's demonstrated need for the information against the degree of intrusion upon the confidentiality of privileged communications necessary to satisfy that need.

*Id.* at 1522;[31] *see also Dowdy*, 440 F. Supp. at 896-97 (holding that judge could be compelled to testify regarding deliberative processes in "extreme and extraordinary circumstances," but that record did not support compelling testimony on the facts before the court).

Other courts have held that the judicial deliberative process privilege is absolute. These courts emphasize the importance of the interests protected by the privilege and the narrowness of the privilege's scope. *See Thomas v. Page*, 837 N.E.2d 483, 493 (Ill. App. 2005); *Office of Citizens'*

---

[31] *Williams* arose out of the Eleventh Circuit's investigation of a federal district court judge for alleged misconduct that included soliciting a bribe in return for an official judicial act. 783 F.2d at 1492. The court held that subpoenas issued to the judge's law clerks and secretaries were enforceable in light of the seriousness of the charges being investigated and the court's need for the testimony. *Id.* at 1522-23.

*Aide/Ombudsman v. Edwards*, 825 N.W.2d 8, 19 (Iowa 2012); *In re Enforcement of Subpoena*, 972 N.E.2d at 1033. As the court in *Thomas*, another case addressing application of the privilege to communications between a judge and his staff, explained:

> We believe that the narrowness of the scope of the privilege militates in favor of holding that it is absolute, rather than qualified. The overriding public good requires that judges be able to confer with each other and their staffs freely and frankly without fear that their communications might be publicly disclosed. Anything less than the protection afforded by an absolute privilege would dampen the free exchange of ideas and adversely affect the decision-making process.

*Thomas*, 837 N.E.2d at 493.

Although we acknowledge the animating principle under *Williams* that the public has a right to "every man's evidence," we note that privileges stand as an exception to this principle for important public policy reasons. In construing the privilege to be inapplicable to *ex parte* communications, we already have balanced the interests served by the privilege against those served by permitting disclosure of requested information. *Cf. DOT v. Taylor*, 841 A.2d 108, 113-14 (Pa. 2004) (explaining how demand for "every man's evidence" can be accommodated by carefully tailoring a privilege's scope). But we do not believe that diluting the privilege's remaining core protection for deliberative processes by making it subject to a case-by-case balancing of competing interests would be appropriate.

As already discussed, one of the oft-repeated hallmarks of the judicial deliberative process privilege is that it "benefits the public," rather than the

officials who assert it. *Leber*, 928 A.2d at 268; *see Kennedy v. Upper Milford Twp. Zoning Hearing Bd.*, 834 A.2d 1104, 1118 n.28 (Pa. 2003); *LaValle v. Office of Gen. Counsel of Com.*, 769 A.2d 449, 457 (Pa. 2001); *Commonwealth v. Orie*, 88 A.3d 983, 1012 (Pa. Super.), *appeal denied*, 99 A.3d 925 (Pa. 2014). That public benefit gives the privilege a strong claim to absolute protection, as it is grounded in constitutional principles of separation of powers and the due process afforded by independent decision-making. In Pennsylvania, other privileges related to the judiciary are absolute, not qualified. *See, e.g.*, *Schanne*, 121 A.3d at 947 (privilege applicable to judicial statements is absolute because "[a] judge must be free to administer the law without fear of consequences"; quoted citation omitted). We therefore conclude that the judicial deliberative process privilege also is absolute and that the trial court erred to the extent the court held that the privilege could be overcome by a showing of "unique" or extraordinary facts in this case.

### *Waiver*

In its opinion, the trial court said, "an argument could well be made that Lunsford has waived any privilege with regard to the issue of his alleged texting with the District Attorney's Office by virtue of his addressing the issue in the 1925(a) Statement he filed in the original *McClure* appeal." Trial Ct. Op. 2/23/17, at 2-3. McClure repeats that argument in her brief. *See* McClure's Brief at 16-17. Once again, we disagree.

In his Rule 1925(a) opinion regarding McClure's direct appeal, Judge Lunsford acknowledged that he "had communications, including text communications, with attorneys from the District Attorney's office after jury selection and prior to trial over the course of over one month."  Lunsford's Pa.R.A.P. 1925(a) Op., 4/30/15, at 2.  He insisted, however, that "[t]he communications did not concern [McClure] or her criminal case."  **Id.**; **see id.** at 4 ("The text communications were not about this case (nor were they inappropriate communications concerning any other cases) and did not give either side a strategic or tactical advantage.  The text messages did not constitute ex parte communications under the Code of Judicial Conduct, Canon 2.9").  McClure's waiver argument relies on these statements.

We have already held that the privilege does not apply to *ex parte* communications or testimony about such communications.  Former Judge Lunsford's discussion of the *ex parte* communications in his opinion therefore did not relate to privileged material and, accordingly, could not waive any privilege relating to those communications.

The question is whether Lunsford's Rule 1925(a) opinion waived the privilege with regard to his deliberative processes and decision-making.  A review of the Rule 1925(a) opinion reveals that it did not discuss Lunsford's deliberations in McClure's case.  Therefore, even if the judicial deliberative

process privilege could have been waived,[32] Lunsford did not say anything in his opinion that could have waived it.

We thus conclude that, on these facts, Lunsford did not waive the judicial deliberative process privilege. That being the case, we need not decide whether, on appropriate facts, the privilege is waivable.

*Exercise of Discretion Regarding McClure's Subpoena*

In his brief, Lunsford makes an extended argument about why the facts of this case did not justify McClure's request for information from him. **See** Lunsford's Brief at 28-34. Though framed primarily as an explanation of why the judicial deliberate process privilege could not be overridden, Lunsford's argument stands more broadly as an argument that the trial court erred in not quashing McClure's subpoena because judges generally should be "immune" from testifying and the facts of this case are not so "unique" or extraordinary as to vitiate their immunity. **See id.** Lunsford says that he "is entitled to a presumption of regularity in the decisions and official acts" he took during McClure's trial, **id.** at 31, and he argues in favor of a broad

---

[32] Neither the trial court nor McClure has cited, nor have we found, any case in which a judge was held to have waived the judicial deliberative process privilege by writing an opinion in which he responded to allegations of bias. McClure's citation to **Shell Oil Co. v. Internal Revenue Service**, 772 F. Supp. 202, 203-05 (D. Del. 1991), is inapposite, as that case did not involve a judicial privilege and merely held that the Internal Revenue Service waived a deliberative process objection to a Freedom of Information Act request by reading from the requested document aloud at a meeting of oil industry representatives. Because the privilege is for the benefit of the public and not the officials who assert it, **Leber**, 928 A.2d at 268, any assertion that an official could waive it should be closely scrutinized.

"prohibition against compelled judicial testimony in Pennsylvania," *see id.* at 29. Though unclear, Lunsford thus appears to be suggesting that his protection against testifying may be broader than that provided by the judicial deliberative process privilege alone.

In considering this argument, we note that a criminal defendant has a constitutional right "to have compulsory process for obtaining witnesses in his favor." U.S. Const., Amend. 6; Pa. Const., Art. 1 § 9. There is no exception in this provision for evidence from judges. The right to compulsory process entitles a defendant to request "any potentially exculpatory, non-privileged information." *Commonwealth v. Mejia-Arias*, 734 A.2d 870, 877 (Pa. Super. 1999). But the defendant must articulate a reasonable basis for the request, and the subpoenaed party retains the right to resist the subpoena by asserting legitimate defenses, "including undue breadth and improper inclusion of irrelevant information." *Id.* at 876, 878 (quoting *In re Grand Jury Proceedings, Jacqueline Schofield*, 846 F.2d 85, 91 (3d Cir. 1973)) (some formatting altered); *see Commonwealth v. Blakeney*, 946 A.2d 645, 661 (Pa. 2008). Within this framework, the trial court has discretion in deciding whether and how to enforce the subpoena. *See Commonwealth v. Mucci*, 143 A.3d 399, 411 (Pa Super. 2016), *appeal denied*, No. 701 MAL 2016 (Pa., Apr. 11, 2017); *Commonwealth v. Berger*, 96 A.3d 1049, 1051 (Pa. Super. 2014).

To the extent Judge Williamson's order enforcing McClure's subpoena would allow McClure to ask Lunsford questions about his judicial reasoning

or other matters protected by the deliberative process privilege, Judge Williamson abused his discretion. But, contrary to Lunsford's suggestion about a broader "prohibition against compelled judicial testimony in Pennsylvania," Judge Williamson retained discretion on the unique facts of this case to enforce McClure's subpoena to the extent that it sought unprivileged information from Lunsford, including information about his *ex parte* communications with the prosecutors. McClure articulated a reasonable basis for seeking that information, and Judge Williamson found that the facts adduced in this case were so extraordinary as to make McClure's request a reasonable one.

McClure produced telephone records showing that Lunsford exchanged more than 150 text messages with prosecutors during the four days he was presiding at McClure's trial. There also were several additional messages on dates before and after trial when significant events took place in the case. McClure presented evidence that Lunsford appeared to have close personal relationships with some of the prosecutors. She also presented evidence that during at least one criminal trial other than this one (the **Brooks** trial in 2012), Parks Miller had sent text messages to Lunsford about that proceeding. When these issues first surfaced, Lunsford made blanket denials, which later turned out to be inaccurate, about posing for photographs with prosecutors and exchanging text messages with some of

them.[33]   On the record before him, Judge Williamson therefore concluded that it was appropriate to permit further examination of Lunsford regarding the *ex parte* communications.  He stated:

> Unfortunately, no evidence has been disclosed concerning the exact language of the extensive text messaging.  One reason for this is that the communication devices used by Lunsford, Foster, Parks Miller and others in the District Attorney's Office are no longer in existence.  When Lunsford returned his phone to Centre County to secure a new phone, an investigation revealed that it had been "set back to factory settings."  Foster's phone was turned over to Parks Miller.  Parks Miller could not remember if she turned her own phone in but denied knowing where her phone was currently or where Foster's phone was.  All of these phones were wiped clean, destroyed, or otherwise made unavailable after the issue of texting between Lunsford and the District Attorney's Office had been raised by defense counsel.  Without testimony from Lunsford himself or the assistance of investigating agencies which may have knowledge of the contents of the text messages, we are unable to determine whether in fact discussions occurred regarding [McClure] or her trial.

Order, 12/22/16, at 2-3.

Lunsford argues that testimony by him is unnecessary because the prosecutors are available to testify and have already testified that they did not have *ex parte* communications with Lunsford about McClure's case.  Lunsford's Brief at 33.   But although Parks Miller denied texting with Lunsford about McClure's case, she testified that she did not know what the

---

[33] ***See*** N.T. 10/30/14, at 13 ("There is no photo of Mr. Boob and I after the Color Run.  I can guarantee you that."), 23 ("There are no text messages between me or either of these two prosecutors [Boob and Parks Miller].  None whatsoever.  None."), 25 ("I will reiterate there are no text messages between me and these two [Boob and Parks Miller].  I swear to God."). Lunsford later clarified some of these statements.  Trial Ct. Op., 4/30/15, at 29-30.

text messages with Lunsford were about. N.T., 11/22/16, at 108, 111, 115-16; N.T. 12/9/16, at 120-21. ADA Foster stated that she exchanged texts with Lunsford about another ADA's illness and about personal travel and social events, but she also stated that she did not remember whether any of the texts sent to her by Lunsford during McClure's trial referenced the trial proceedings. N.T. 12/9/16, at 45-48, 50-51, 55.

On this unique record, Judge Williamson had discretion to order that former Judge Lunsford provide testimony, and, if they exist, documents[34] relating to his *ex parte* communications with the Centre County prosecutors. Subpoenas compelling testimony from judges should be exceedingly rare, and trial courts should decline to enforce such subpoenas without a strong showing of a reasonable basis to compel a judge's non-privileged testimony; but the record was sufficient to enable Judge Williamson to find such a basis here. We caution that care must be taken during any testimony by former Judge Lunsford to assure that the questioning does not intrude into areas of his judicial deliberations or other topics that are protected by the judicial

---

[34] In addition to seeking copies of text messages at the time of proceedings in this case, McClure's second subpoena also sought documents relating to other criminal cases and documents provided to the "Judicial Misconduct Board" (presumably, a reference to the Judicial Conduct Board of Pennsylvania, *see* Pa. Const., Art. 5 § 18(a)). Lunsford has not raised any specific issues in this appeal about the propriety of those additional requests, and, for reasons already discussed, the trial court's order enforcing McClure's second subpoena is not properly before us. Lunsford remains free on remand to object to these requests on the basis of relevance, overbreadth, or other grounds. *See Mejia-Arias*, 734 A.2d 878.

deliberative process privilege. To the extent possible, the testimony should be limited to the non-privileged *ex parte* communications.

In sum, we affirm the trial court's November 21, 2016 order denying Lunsford's first motion to quash McClure's subpoena to the extent that the subpoena sought "copies of all text messages between [Lunsford], former Assistant District Attorney Nathan Boob, Assistant District Attorney Lindsay Foster, and District Attorney Stacy Parks Miller from August 4, 2014 to October 29, 2014" and to the extent that the subpoena sought Lunsford's testimony to obtain factual information regarding *ex parte* communications during this case. We reverse insofar as the order would permit McClure to inquire about information protected by the judicial deliberative process privilege, including any inquiries about Lunsford's thought process in making decisions or reasons for any of his rulings relating to the disposition of the charges against McClure. We vacate the trial court's December 9, 2016 order denying Lunsford's second motion to quash.

## No. 145 MDA 2017
## (THE APPEAL BY MCCLURE)

In her appeal from the December 22, 2016 order dismissing her motion to preclude retrial based on double jeopardy, McClure raises the following issues:

> 1. Was the evidence sufficient to establish judicial and prosecutorial misconduct intended to deprive Ms. McClure of a fair trial; conduct which ignored the bounds of legitimate advocacy; and established a desire to win a conviction by any means necessary?

2. Did the Trial Court analyze the "incredible" number of text communications between former Judge Lunsford and members of the District Attorney's office under the appropriate legal standard and give sufficient weight to the fact that the relevant phones were "wiped clean, destroyed or otherwise made unavailable after the issue of texting had been raised by defense counsel"?

3. Given former Judge Lunsford's refusal to testify or produce evidence, did the Trial Court commit error in failing to either (1) draw a negative inference from the failure to preserve physical evidence; or (2) require the testimony of Judge Lunsford and production of the text messages?

McClure's Brief at 4.

This Court has jurisdiction over an order denying a non-frivolous double-jeopardy motion as a collateral order under Rule 313. *See Commonwealth v. Taylor*, 120 A.3d 1017, 1021-22 (Pa. Super. 2015); *see also* Pa.R.A.P. 313, Note; Pa.R.Crim.P. 587(B)(6). The trial court specifically found that McClure's motion to dismiss on double jeopardy grounds was not frivolous. Order, 1/2/17. We therefore have appellate jurisdiction over this appeal.

However, the December 22, 2016 order denying McClure's motion to dismiss on double jeopardy grounds was entered while Judge Lunsford's appeal from the November 21, 2016 order denying his motion to quash McClure's subpoena was pending. We conclude that the trial court lacked jurisdiction to enter the December 22, 2016 order during the pendency of that appeal, and we therefore vacate the December 22, 2016 order. Although neither party addresses whether the trial court could exercise jurisdiction to deny McClure's double jeopardy motion while Lunsford's

appeal was pending,[35] we may raise the issue *sua sponte*. **See, e.g.**, **Grimm v. Grimm**, 149 A.3d 77, 82 (Pa. Super. 2016), **appeal denied**, No. 449 WAL 2016, 2017 WL 1159583 (Pa., Mar. 28, 2017).

Pennsylvania Rule of Appellate Procedure 1701(a) provides, "Except as otherwise prescribed by these rules, after an appeal is taken . . . the trial court . . . may no longer proceed further in the matter." Rule 1701(a) reflects the fact that once an appeal is filed, jurisdiction over the case is transferred to the appellate court, and the trial court therefore no longer has power to act in it. **See Jackson v. Hendrick**, 746 A.2d 574, 575 (Pa. 2000) ("[f]iling an appeal normally divests the trial court of jurisdiction to proceed"). However, this rule contains an exception for cases similar to this one, in which the appeal is from an interlocutory or other order dealing with only a discrete issue in the case. Rule 1701(c) states:

> **Limited to matters in dispute.** Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, . . . the appeal . . . shall operate to prevent the trial court . . . from proceeding further with only such item, claim or assessment, unless otherwise ordered by the trial court . . . or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant.

Pa.R.A.P. 1701(c).[36]

---

[35] The trial court does not address whether it had jurisdiction in its order dismissing McClure's motion to preclude retrial or in its Rule 1925(a) statement.

[36] The rule also contains an exception that permits the trial court to proceed further on all issues in the case if the appeal is taken from an interlocutory order that is not appealable. Pa.R.A.P. 1701(b)(6). Because Lunsford's

*(Footnote Continued Next Page)*

Under Rule 1701(c), when a party has appealed from a collateral order, the trial court retains jurisdiction to continue to act on those parts of the case that are unrelated to the collateral matter (that is, the "particular item, claim or assessment adjudged") that is the subject of the appeal. As the Supreme Court explained in **Rosen v. Rosen**, 549 A.2d 561, 564 (Pa. 1988), "The purpose of Rule 1701(c) is to prevent appeals of collateral issues from delaying the resolution of the basic issues where the proceeding below can continue without prejudicing the rights of the party seeking the interim review." Whether and to what extent a trial court may proceed under Rule 1701(c) depends on "whether the orders on appeal were relevant to or at issue in the proceedings continuing in the trial court." **R.W.E. v. A.B.K.**, 961 A.2d 161, 170 n.7 (Pa. Super. 2008). To the extent the matters remaining in the trial court are not dependent on resolution of the issue on appeal, the trial court may continue to address them. But when the remaining proceedings in the trial court are "tightly intertwined" with the collateral matter that is on appeal, the trial court may not take any action on those intertwined matters until the appeal is concluded. **See Commonwealth v. Hall**, 476 A.2d 7, 10 (Pa. Super. 1984) (trial court could not proceed to trial under Rule 1701(c) so long as appeal from denial of

*(Footnote Continued)* ─────────────

appeal was taken from a collateral order that is appealable under Rule 313, that exception does not apply here.

- 60 -

motion to recuse was pending, because recusal issue was too closely related to the defendant's right to a fair trial to permit the trial to proceed).[37]

Here, the trial court's December 22, 2016 order denied McClure's motion to dismiss the charges against her on double jeopardy grounds because McClure had failed to prove her double jeopardy claim. Order, 12/22/16, at 2, 4. But McClure had served her subpoenas on former Judge Lunsford so that she could obtain evidence that she contended would help prove that claim, and the trial court had declined to quash the subpoenas because of the need for such evidence. Indeed, the court's order denying the double jeopardy motion stated, "Without testimony from Lunsford himself . . . we are unable to determine whether in fact [*ex parte*] discussions occurred regarding [McClure] or her trial." *Id.* at 3. It added, "[s]hould counsel for [McClure] be successful in securing additional factual information through use of the discovery tools we have granted to him, we will be willing to readdress [McClure's double jeopardy] motion prior to or following the trial." *Id.* at 4. The court's own statements therefore establish that the evidence McClure sought to obtain from Lunsford was important to the double jeopardy motion and that the motion was dependent on that evidence. On this record, then, the trial court did not have jurisdiction to proceed to deny the double jeopardy motion while an appeal

_____

[37] The **Hall** decision predated promulgation of Pa.R.A.P. 1701(b)(6), which would have permitted trial to proceed on the ground that the recusal decision was a nonappealable interlocutory order. **See Hall**, 476 A.2d at 10.

to determine whether the evidence could be obtained from Lunsford was pending in this Court. The issue presented by Lunsford's appeal was "relevant to" and, indeed, "tightly intertwined" with McClure's double jeopardy motion. *See R.W.E.*, 961 A.2d at 170 n.7; *Hall*, 476 A.2d at 10.

Because Lunsford's pending appeal deprived the trial court of jurisdiction to enter the December 22, 2016 order denying McClure's motion to preclude retrial, we vacate the trial court's December 22, 2016 order. In light of this disposition, we do not reach the substance of McClure's appellate issues and we deny McClure's August 29, 2017 application for relief without prejudice to McClure's right to raise in the trial court the issues presented in that application.

In No. 1982 MDA 2016, affirmed in part and reversed in part.

In Nos. 3 MDA 2017 and 145 MDA 2017, orders vacated.

McClure's August 29, 2017 application for relief denied without prejudice.

Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/20/2017