J-A11019-22

2023 PA Super 143

WILLIAM SCHLUTH     :     IN THE SUPERIOR COURT OF
                            :          PENNSYLVANIA
                            :
       v.                      :
                            :
                            :
KRISHAVTAR, INC. AND     :
BARKRUSHNA PANCHAL     :
                            :     No. 2088 EDA 2021
        Appellants          :

Appeal from the Order Entered September 7, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 170602871

WILLIAM SCHLUTH     :     IN THE SUPERIOR COURT OF
                            :          PENNSYLVANIA
                            :
       v.                      :
                            :
                            :
KRISHAVTAR, INC     :
                            :
        Appellant          :     No. 2089 EDA 2021
                            :

Appeal from the Order Entered September 7, 2021
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 170603382

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY STABILE, J.:                                      **FILED JULY 31, 2023**

Appellants, Krishavtar, Inc. and Barkrushna Panchal, appeal for the third time in these consolidated cases from the September 7, 2021 order entered in the Court of Common Pleas of Philadelphia County, denying their petitions to mark judgments satisfied as to Krishavtar and Panchal. Following review,

we conclude the trial court was without jurisdiction to enter the order and therefore we vacate the order.

Our review of the record informs us of the following summary of the factual and procedural background of this case. In 2008, Krishavtar, through its president Panchal, entered into an agreement of sale with Appellee, William Schluth, for the purchase of a Philadelphia property upon which Schluth operated a gas station for several years. It was Panchal's intent to purchase the property and to operate the gas station as part of his retirement. The purchase price was $695,000, which included an up-front payment of $136,000 and an agreement, subsequently modified, to account for contamination and necessary remediation, to pay the balance in installments. The terms of the payments were set forth in a Note executed by Panchal on behalf of Krishavtar. The Note was secured by a Mortgage on the property between Krishavtar as Borrower and Schluth as Lender. Panchal also executed a personal Guaranty of Mortgage.

Eventually, Krishavtar defaulted on the Mortgage and Panchal breached the terms of the Guaranty by failing to make payments upon Krishavtar's default. Consequently, Schluth filed two actions, one against Krishavtar for mortgage foreclosure ("Mortgage Foreclosure Case"—an *in rem* action docketed at No. 3382-June Term 2017), and one against both Appellants for breach of contract ("Breach of Contract Case"—an *in personam* action docketed at No. 2871-June Term 2017). On March 13, 2019, following a non-

jury trial, the trial court entered an order in favor of Schluth in the amount of $555,942.96 in the Mortgage Foreclosure Case and directed that the prothonotary may issue a writ of execution for the sheriff to proceed to sale of the real property. In that same order, the court entered an *in personam* judgment in the amount of $555,942.96 in favor of Schluth and against Panchal in the Breach of Contract Case, representing Panchal's personal liability.[1] On April 2, 2019, Schluth filed a Writ of Execution in the amount of $555,942.96 in the Mortgage Foreclosure Case. On June 6, 2019, judgments in that amount were entered against Appellants in both cases.

After the denial of post-trial motions, Appellants filed their First Appeal in both cases to this Court on June 6, 2019, that we subsequently consolidated ("First Appeal"). In their First Appeal, Appellants maintained that the court erred by failing to excuse performance based upon Schluth's material breach, that the court erred by failing to allow for rescission of the contract, and that the court erred in calculating damages because it failed to consider the parties' modification of the payment terms.

In connection with the First Appeal, Appellants also filed an emergency petition on June 24, 2019, under both docket numbers seeking a stay of the

---

[1] The Guaranty of Mortgage dated April 9, 2009 (attached to Schluth's Amended Complaint as Exhibit E in the Breach of Contract Case) authorized, *inter alia*, Schluth to join Panchal in any action against Krishavtar as Mortgagor, or to recover against Panchal in any independent action in the event a default occurred under the Mortgage.

sheriff's sale of the property. By order entered on July 3, 2019, the trial court denied the petition.[2] Appellants then filed a motion for reconsideration of the stay denial on July 22, 2019. While the motion for reconsideration was pending, the property sold at sheriff's sale on August 6, 2019, to JSW Holdings, LLC ("JSW Holdings"), a limited liability company owned by Schluth for $420,000, as reflected on the Mortgage Foreclosure Case docket.[3] Two days later, on August 8, 2019, the trial court granted Appellant's reconsideration motion and ordered all execution proceedings stayed. The order, however, was entered only under the docket for the Breach of Contract Case.[4]

On June 30, 2020, this Court in the First Appeal affirmed in part and reversed in part the trial court's March 13, 2019 orders. We *vacated* the trial court's damages award and remanded the case with direction to the trial court to (1) determine whether the payment terms of the agreement of sale had

_____

[2] We note with frustration that while the Mortgage Foreclosure Case and Breach of Contract Case were not consolidated in the trial court, the dockets reflect that several documents—including the emergency petition and the trial court's denial of the petition, were filed with both captions on a single document filed only in the Breach of Contract Case.

[3] In anticipation of the sale, on the previous day, Schluth assigned the Mortgage on the property to JSW Holdings.

[4] We note that the sheriff's sale is reflected only on the docket of the Mortgage Foreclosure Case while the order staying execution appears only on the docket of the Breach of Contract Case and bears the caption of that case only. **See** Order, 8/12/19, at 1; Reproduced Record at 161a.

been modified by the conduct of the parties and (2) enter an amount of damages consistent with those findings. *See Schluth v. Krishavtar, Inc. and Panchal*, Nos. 2013 and 2014 EDA 2019, unpublished memorandum (Pa. Super. filed June 30, 2020), *appeal denied*, 242 A.3d 1249 (Pa. 2020).

Pursuant to our remand order, on March 8, 2021, the trial court issued findings of fact and conclusions of law. While the court found that there was an offer to modify the payment amounts, it found there was no agreement between the parties to modify the Note and/or Mortgage. The court calculated that Schluth was entitled to damages in the amount of $612,878.93 on his claims for breach of the Note. Findings of Fact and Conclusions of Law, 3/8/21 at 4, ¶3. The court also found that the property was sold at sheriff sale on August 6, 2019 for $420,000 to an entity owned by Schluth and, thereafter, resold on September 25, 2020 for $600,000.[5] *Id.* at 4 ¶4. The court then recalculated damages in favor of Schluth by subtracting from its award of $612,878.93 the net sum of $509,090.92, representing the net proceeds from the sale as determined by deducting costs incurred for the sheriff's sale and closing costs, and then adding interest. After making these adjustments, the court determined that the amount then owing by the defendants to Schluth was $92,616.09. *Id.* On April 3, 2021, judgment was entered on both dockets

_____

[5] While the amount of $600,000 is not expressly referenced in the court's findings, it is found elsewhere in the record and, in any event, the court's net calculation of damages was dependent upon using this number.

- 5 -

in the amount of $92,616.09. Appellants then filed their second appeal ("Second Appeal") on April 6, 2021. In their Second Appeal, Appellants challenged the trial court's findings that there was no contract modification based upon the parties' conduct, and that it erred in calculating damages when they claimed they presented sufficient proof they did not owe any money due to Schluth's putative breach of contract. On March 9, 2022, we affirmed the trial court's March 8, 2021 orders that were entered as judgments on April 3, 2021. *See Schluth v. Krishavtar, Inc. and Panchal*, Nos. 745 and 746 EDA 2021, unpublished memorandum (Pa. Super. filed March 9, 2022).[6]

Meanwhile, on August 9, 2021, **after** we vacated Schluth's damage award under the First Appeal, and while the March 8, 2021, orders in the Second Appeal were still pending before this Court, Appellants filed identical petitions in the trial court to mark the June 6, 2019 judgments satisfied in both the Mortgage Foreclosure and Breach of Contract Cases. Petitions to Mark Judgment Satisfied, 8/9/21, at ¶¶ 3, 9. In each petition, Appellants represented that on August 5, 2019, the mortgage on the property was assigned by Schluth to JSW Holdings. *Id.* at ¶ 4. Each petition further reflected the August 6, 2019 sheriff's sale to JSW Holdings for $420,000, and JSW Holdings' subsequent sale of the property for $600,000 to Posh Real

---

[6] On May 19, 2022, we denied Appellants' application for reconsideration/argument *en banc.* On September 27, 2022, our Supreme Court denied the petitions for allowance of appeal.

Estate Management, LLC, on September 25, 2020. *Id.* at ¶¶ 5, 7. Appellants represented that Schluth failed to file a petition to fix the fair value of the property within six months of the sale to judgment creditor JSW Holdings as required by 42 Pa.C.S.A. § 8103(d) and, therefore, Appellants were entitled to have the judgments marked satisfied.[7]

By order entered September 7, 2021, the subject of this Third Appeal, the trial court denied Appellants' petitions to mark the judgments satisfied, explaining that a deficiency judgment in the amount of $92,616.09 was properly entered on April 3, 2021 against Krishavtar, Inc. as borrower and against Panchal as guarantor. Therefore, Appellants' petitions lacked merit. Order, 9/7/21, at 1 n.1. This timely Third Appeal followed. The trial court did not order the filing of a statement of errors pursuant to Pa.R.A.P. 1925(b), but did file an opinion on October 27, 2021, indicating that the reasons for denying Appellants' petitions were set forth in the September 7, 2021 order.[8]

---

[7] For ease of discussion and to minimize confusion, we shall henceforth refer to JSW Holdings by the name of its owner, Schluth.

[8] In a footnote to the September 7, 2021 order, the trial court explained its denial of the petitions, stating:

> Following a remand and further briefing by the parties, this court, on March 8, 2021, issued findings of fact and conclusions of law which set a deficiency judgment of $92,616.09. The deficiency judgment was entered on April 3, 2021 and both [Appellants] filed timely notices of appeal. The deficiency judgment was properly entered against the borrower (Krishavtar, Inc.) and the guarantor (Panchal). Therefore, [Appellants' petitions] are without merit.

*(Footnote Continued Next Page)*

- 7 -

Appellants ask us to consider one issue on appeal, which we repeat here verbatim:

> Whether the trial court erred in denying Appellants, Krishavtar, Inc. and Barkrushna Panchal's Petition to Mark the Judgment Satisfied where appellee purchased the Appellants' real estate at a sheriff's sale and then failed to proceed within six months of the sale to petition the court to fix the fair market value of the real estate pursuant to 42 Pa.C.S.A. § 8013 and the judgment against Appellants' deemed to be fully satisfied as a matter of law, thus entitling Appellants' to have the judgment marked satisfied of record, especially that the judgment was already been vacated by the Superior Court on Appeal?

Appellants' Brief at 4.

When reviewing deficiency judgment proceedings, an appellate court is limited to determining whether there is sufficient evidence to sustain the holding of the trial court, or whether the court committed reversible error of law. ***Bryn Mawr Trust Co. v. Healy***, 667 A. 2d 719 (Pa. Super. 1995), citing cases.

Relevant to our discussion are the following provisions of the Deficiency Judgment Act ("DJA"):

> **(a) General rule.--**Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and **the price for which such property has been sold is not sufficient to satisfy the amount of the judgment**, interest and costs and **the judgment creditor seeks to collect the balance due on said judgment**, interest and costs, **the judgment creditor shall petition the court to fix the fair market value of the real property sold.** The petition shall be filed as a

_____

Order, 9/7/21, at 1 n.1.

supplementary proceeding in the matter in which the judgment was entered.

. . .

**(d) Action in absence of petition.--If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation)**, the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt . . . may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, **whereupon the court,** after notice as prescribed by general rule, and being satisfied of such facts, **shall direct the clerk to mark the judgment satisfied, released and discharged**.

42 Pa.C.S.A. § 8103 (a), (d). (Emphasis added).

As indicated, the DJA directs that if the price for which a property has been sold is not sufficient to satisfy the judgment, a petition to fix the fair market value of the property must be filed within six months of the property sale in order to determine the balance due a judgment creditor, or in other words, a "deficiency judgment." The petition is to be filed "in the matter in which the judgment was entered." 42 Pa.C.S.A. § 8103(d). In **Home Sav. and Loan Co. of Youngstown, Ohio v. Irongate Ventures, LLC**, 19 A.3d 1074 (Pa. Super. 2011), this Court determined that the plain language of the DJA "requires petitions to fix fair market value to be filed in the dockets of the Foreclosure Actions." **Id.** at 1079. Here, Appellants filed petitions in both the Mortgage Foreclosure and the Breach of Contract Cases to have the judgments

marked as satisfied due to Schluth's failure to petition the court to fix the fair market value of the real estate within six months of the sheriff's sale, as required under the DJA.[9]

> As this Court recognized in **Irongate Ventures**,
>
> "The objective of the [DJA] is to relieve a debtor from further personal liability to the judgment creditor when the real property taken by the judgment creditor on an execution has a fair market value on the date of sale sufficient so that the judgment creditor can dispose of the property to others without a further loss." **Horbal v. Moxham Nat. Bank**, 697 A.2d 577, 582 (Pa. 1997).
>
> If the judgment creditor fails to file a § 8103(a) petition to fix the fair market value of the property within six months of the sheriff's sale, then the debtor may file a petition to have the judgment marked satisfied, released and discharged as a matter of law. 42 Pa.C.S.A. § 8103(d); **First Nat. Consumer Discount Co. v. Fetherman**, 527 A.2d 100, 105 (Pa. 1987).

**Id.**, 19 A.3d at 1078 (cleaned up). Further,

> [u]nder the Pennsylvania [DJA] **a mortgagee who purchases the mortgaged property in execution proceedings cannot recover a deficiency judgment unless and until the mortgagee obtains a court determination of the fair market value of the mortgaged property and credits that amount to the unsatisfied liability**. When, as eventuated in this case, the mortgagee fails to bring a proceeding for this purpose within six months after the foreclosure sale, the debtor and guarantor are permanently discharged.

---

[9] Under **Irongate Ventures,** the petition filed in the Breach of Contract action was improper under the DJA. If filed and granted in the foreclosure action, the order would release any other debtor, obligor, guarantor, or any other person liable directly or indirectly to the judgment creditor for payment of the debt. 42 Pa.C.S.A. § 8103(d).

- 10 -

***U.S. v. Shimer***, 367 U.S. 374, 377, 81 S.Ct. 1554, 1557 (1961) (footnote omitted).

Appellants argue that they were entitled to satisfaction of the June 6, 2019 judgments entered against Krishavtar, Inc. and Panchal because Schluth, who purchased the property at sheriff's sale, did not petition the court for a deficiency judgment within six months of the sale as required under Section 8103(d).[10] Schluth purchased the property on August 6, 2019, and subsequently resold the property in September 2020, three months after this Court decided Appellants' First Appeal and vacated the original judgment and remanded for, *inter alia*, a determination of damages.

Schluth does not argue that he complied with the DJA. Rather, he highlights the fact that the trial court issued an order on August 8, 2019, entered on August 12, 2019, staying all further execution proceedings, thus relieving him of any obligation to petition for a deficiency judgment for the duration of the stay. Schluth further argues that the trial court in any event fixed the deficiency judgment upon remand after the First Appeal, thus making Appellants' petitions to have the judgments marked satisfied meritless.

---

[10] We note that the six-month period runs from the date of delivery of the deed. ***See Conestoga Bank v. Tioga Investments II, LLC***, 138 A.3d 652, 656 (Pa. Super. 2016); 42 Pa.C.S.A. § 5522(b)(2). Here, the deed dated September 3, 2019 was recorded on September 16, 2019. Although we do not know the precise date of the delivery of the deed, using the date the deed was recorded, we can safely conclude that the latest date by which JSW Holdings ordinarily was required to petition to fix the fair market price under Section 8103 was six months from the date the deed was recorded.

- 11 -

Before we can address the merits of Appellants' issue on appeal, we find we first are obliged to determine whether Appellants' pending appeals challenging the judgments in the Mortgage Foreclosure and Breach of Contract actions deprived the trial court of jurisdiction to entertain the petitions. While the parties to this appeal have not raised this issue of jurisdiction, we may do so *sua sponte*, as jurisdiction may be raised at any time, even for the first time on appeal. ***See Bisher v. Lehigh Valley Health Network, Inc.***, 265 A.3d 383, 399 (Pa. 2021) (even if the trial court failed to address issues, the Superior Court has the "power, if not duty, to raise jurisdictional issues *sua sponte*").

Once an appeal is taken, a trial court may no longer proceed further in the matter. Rule 1701(a) of the Rules of Appellate Procedure divests a trial court of jurisdiction to proceed in a matter once an appeal has been filed. ***Commonwealth v. McClure,*** 172 A.3d 668, 685 (Pa. Super. 2017). Rule 1701(a) reflects the fact that once an appeal is filed, jurisdiction over a matter is transferred to the appellate court, and the trial court therefore no longer has power to act in the matter. ***Id.***, (citing ***Jackson v. Hendrick****,* 746 A.2d 574, 575 (2000)). Rule 1701(c), however, contains an exception permitting a court to proceed with the remaining matters before it when the appeal pertains to a collateral issue in the case, but only if that collateral issue is unrelated to and not intertwined with the matters on which the trial court intends to proceed. ***Id.*** The extent to which a trial court may proceed under

Rule 1701(c) depends on whether the orders on appeal were relevant to or at issue in the proceedings continuing in the trial court. ***McClure,*** 172 A.3d at 699 (citing ***R.W.E. v. A.B.K.***, 961 A.2d 161, 170 n.7 (Pa. Super. 2008)). To the extent the matters remaining in the trial court are not dependent on resolution of the issue on appeal, the trial court may continue to address them. ***Id.*** But when the remaining proceedings in the trial court are "tightly intertwined" with the collateral matter that is on appeal, the trial court may not take any action on those intertwined matters until the appeal is concluded. ***Id.***

Here, at the time Appellants filed their Section 8103(d) petitions with the trial court, their Second Appeal was pending in our Court. In that appeal Appellants challenged the trial court's findings that there was no contract modification based upon the parties' conduct and that the court erred in calculating damages when they claimed they presented sufficient proof they did not owe any money for a putative breach of contract by Schluth. These issues questioned directly both the liability for, and the amount of, the judgment Schluth was awarded in the foreclosure action. With liability and damages at issue on appeal, it would not have been possible for Schluth to seek a deficiency judgment and for the court to assess a deficiency judgment because doing so would require first that liability be established and then that the amount of the judgment be established. This is so because "[a] mortgagee who purchases the mortgaged property in execution proceedings cannot

recover a deficiency judgment unless and until the mortgagee obtains a court determination of the fair market value of the mortgaged property and credits that amount to the unsatisfied liability." ***Shimer, supra.*** A court cannot proceed to determine a deficiency while liability and damages are the subject of a pending appeal. If a judgment's validity is questionable, then the validity of all subsequent collection proceedings dependent on that judgment may be subject to attack as well. Therefore, Schluth could not have petitioned the trial court to assess a deficiency judgment under Section 8103(a) while the foreclosure judgment was the subject of Appellants' Second Appeal as the trial court would have been without jurisdiction to consider any such petition. The Second Appeal also could not be considered collateral to the foreclosure judgment because the appeal directly questioned whether Appellants owed Schluth any money at all. Therefore, the trial court was without jurisdiction to consider Appellants' Section 8103(d) petitions.

Rule 1701(a) likewise would have prevented the trial court from considering a deficiency judgment petition by Schluth during the pendency of Appellants' First Appeal, filed immediately after the judgment in mortgage foreclosure, for the same reason the trial court could not entertain a deficiency judgment petition while the Second Appeal was pending. Like their Second Appeal, Appellants' First Appeal challenged liability based upon Appellant's claim that Schluth committed a material breach, that the court erred by failing to allow for rescission of the contract, and that the court erred in calculating

damages. These issues raised the same jurisdictional impediments to seeking a deficiency judgment as those pertaining to the Second Appeal. It also is important to acknowledge that this Court's resolution of the First Appeal resulted in our vacating the damage awards in both cases. With the damage awards vacated, there was no basis on remand to seek a deficiency judgment unless and until damages once again were determined and awarded. When the trial court did so upon remand, Appellants filed their Second Appeal that again deprived the trial court of jurisdiction to consider a deficiency judgment petition. Since the time the property was sold at sheriff's sale there existed no time when the trial court possessed continuing jurisdiction to entertain a deficiency judgment petition by Schluth due to the pendency of Appellants' various appeals, including the present one. We therefore find we must vacate the trial court's denial of Appellants' petitions to mark the June 6, 2019 judgments as satisfied, released, and discharged under Section 8103(d), due to a lack of jurisdiction in the trial court to act while there were pending appeals in this Court.

While we have found little precedent to guide us on the issue of trial court jurisdiction while an appeal is pending within the context of the DJA, the cases of *Leasing Service Corporation v. Benson*, 464 A.2d 402 (Pa. Super. 1983) and *First Seneca Bank v. Greenville Distributing Company*, 533 A.2d 157 (Pa. Super. 1987), are both instructive and persuasive.

In **Leasing Service**, the appellant, John W. Benson ("Benson"), filed a petition to strike and/or open a judgment by confession entered against him by the appellee, Leasing Service Corporation (LSC), based upon a default under a lease agreement for mining equipment to Appalachian Pocahontas Coal Co., Inc. ("Appalachian") that Benson unconditionally guaranteed. The lower court denied the petition and Benson appealed at docket No. **592 Philadelphia, 1980**.

LSC proceeded with the sale of the formerly leased equipment and was the sole bidder and purchased all of the repossessed equipment for $79,000. It then filed a claim against Appalachian for the deficiency resulting from the sale of the equipment. The court hearing the matter determined that LSC was barred from recovering any deficiency from Appalachian because LSC did not act in a commercially unreasonable manner in the sale and disposition of the equipment, thus leaving Appalachian free of any further indebtedness to LSC. Based upon the release of Appalachian, Benson argued that as a guarantor he too was released and demanded that LSC mark the judgment against him satisfied pursuant to 42 Pa.C.S.A. § 8104. In response, LSC filed a petition to have Benson's satisfaction demand declared a nullity. The court granted LSC's petition and denied counter-petitions by Benson. Benson then filed a second appeal to the Superior Court at **No. 1041 Philadelphia, 1982**.

In resolving Benson's Section 8104 appeal at **No. 1041, Philadelphia, 1982**, we affirmed the lower court's decision to have the satisfaction demand

by Benson declared a nullity, but not on the grounds relied upon by the lower court. At the time Benson made his June 30, 1981 demand under Section 8104 to release his guaranty based upon LSC being barred from recovering any deficiency against Appalachian, our Court already had jurisdiction of his appeal at **No. 592 Philadelphia, 1980** that, *inter alia*, challenged both the very validity of the judgment and the amount owed in that confession of judgment action. We stated that the appeal was a full-force attack on all meaningful aspects of the judgment which Benson was at the same time then attempting to have marked satisfied under Section 8104 in his appeal at **No. 1041 Philadelphia, 1982**. We held that the court was correct to have the satisfaction demand declared a nullity, but not by evaluating the merits of the dispute. Instead, the court should have acted upon procedural grounds mandated by Rule 1701 of the Rules of Appellate Procedure. By addressing the merits, the lower court improperly delved into the merits of an issue that directly affected a matter then on appeal before our Court.

*First Seneca Bank* is instructive as it demonstrates both when a trial court may act while an appeal is pending and when it may not. In *First Seneca Bank*, Greenville Distributing Company ("Greenville") executed and delivered to the appellant, First Seneca Bank, a mortgage of $140,000. The mortgage was executed on behalf of Greenville by its president, Robert M. Woods. Separately, other individuals, together with Woods (collectively appellees), executed a note for $140,000 that contained a confession of

judgment clause. The bank subsequently confessed judgment on the note as against the individuals. When Greenville stopped making payments on the note, the bank filed a two-count complaint. The first count was in mortgage foreclosure against Greenville only. The second was in assumpsit against the bank and the individuals on the note. The court severed the count in mortgage foreclosure from the count in assumpsit and entered a default judgment against Greenville in the mortgage foreclosure action for $93,016.42 plus interest. The property was then sold at sheriff sale to the bank for $60,000. On that same day, the bank filed *in the mortgage foreclosure action* a petition to fix a deficiency judgment against Greenville and the individual appellees. By order dated March 27, 1985, the court gave Greenville credit against the judgment in the mortgage foreclosure action and found the deficiency in that action to be $35,474.16.

The bank appealed (the *first appeal*) claiming it was entitled to a deficiency judgment of $70,474.16. The appellees then petitioned in the lower court to strike the deficiency judgment.[11] The court agreed and by order dated June 11, 1985, it struck the deficiency judgment as well as the bank's petition to fix a deficiency. In that same order, the court also dismissed the count in assumpsit to collect on the note and marked the confessed judgments against the individual appellees satisfied, discharged, and released. The bank filed a

---

[11] This was the second time appellees petitioned to strike the deficiency judgment.

*second appeal* raising, *inter alia,* whether the trial court lacked jurisdiction to enter the June 11, 1985 order that struck the deficiency judgment because an appeal had been filed from the prior order of March 27, 1985,that set a deficiency at $35,474.16. Because both appeals involved the same parties and the same mortgage foreclosure proceedings, we consolidated them for disposition on appeal.

In addressing the bank's first appeal relating to the amount of the deficiency judgment, we raised *sua sponte* whether the court had subject matter jurisdiction to consider the deficiency judgment petition in the mortgage foreclosure action in light of **Meco Realty Company v. Burns**, 200 A.2d 869 (Pa. 1964). We held it did not because at that time a deficiency judgment could not be sought in a mortgage foreclosure action, an *in rem* proceeding.[12]  **Id.**  The court lacked jurisdiction to consider the deficiency judgment petition in the *in rem* mortgage foreclosure action and the deficiency judgment consequently was void and had to be vacated.

_____

[12] Under that prior regime, lenders often found themselves in somewhat of a catch-22 whereby they could not obtain a deficiency judgment without first obtaining a personal judgment. Procedural delays in obtaining a personal judgment could push a lender well past six months after foreclosure for filing a petition for a deficiency judgment. **See** Harris Ominsky, *The Lender's Gauntlet Revisited,* 30 Vill. L. Rev. 1130, 1133 n.14 (1985), *https://digitalcommons.law.villanova.edu/vlr/vol30/iss5/3.*  As a result of 1978, 1998, and 2004 amendments to the DJA, these obstacles to obtaining a deficiency judgment have been removed so that now petitions to fix fair market value are to be filed as supplemental proceedings to mortgage foreclosure actions. **Irongate Ventures, supra.**

In the bank's second appeal challenging whether the lower court could act while the bank's first appeal was pending, we agreed, consistent with our conclusion in the first appeal, that the March 27, 1985 order that purported to enter a deficiency judgment in the mortgage foreclosure action was void. We concluded, however, that to the extent the order and judgment attempted to strike off the deficiency judgment in the mortgage foreclosure action while the first appeal was pending, the court was without jurisdiction to proceed and that portion of the order and judgment had to be vacated. We went on to conclude however, that the June 11, 1985 order and judgment did not have to be vacated in its entirety because that order also related to the petition to have the confessed judgments marked satisfied in the assumpsit action. We stated that the prohibition against further proceedings in the trial court under Pa.R.A.P. 1701(a) is limited only to those items, claims, or assessments involved in an appeal as provided for under Pa.R.A.P. 1701(c).[13] Because the March 27, 1985 judgment on appeal did not relate to the confession of judgment action, but only to the deficiency in the mortgage foreclosure action, the court had jurisdiction to consider the petition to have the confessed judgment marked satisfied in the assumpsit action. As well, the court had

---

[13] Pa.R.A.P. 1701(c) provides in part that "[w]here only a particular item, claim, or assessment adjudged in the matter is involved in an appeal . . . the appeal . . . shall operate to prevent the trial court . . . from proceeding further with only such item, claim, or assessment, unless otherwise ordered by the trial court or . . . the appellate court or a judge thereof as necessary to preserve the rights of the appellant."

jurisdiction to consider the petition to dismiss the complaint in assumpsit because the petition did not relate to the mortgage foreclosure action that was on appeal, but to a separate cause of action that had been severed from the cause of action to which the March 27, 1985 order related. Therefore, we vacated the judgment entered in the mortgage foreclosure proceedings that had been entered after the first appeal had been taken, as well as that portion of the June 11, 1985 order that related to those proceedings, but affirmed the June 11 order to the extent it directed the confessed judgments to be marked satisfied, discharged, and released, and the complaint in assumpsit dismissed.

The holdings in **Leasing Service** and **First Seneca Bank** assist in the present appeal because they confirm that while an appeal is pending, a trial court is without jurisdiction to proceed further with respect to any claims, items, or assessments involved in a pending appeal. The extent to which a lower court may proceed during a pending appeal depends upon whether the issues on appeal are relevant to or at issue before the lower court. **McClure, supra**. Where the remaining proceedings in a lower court are "tightly intertwined" with the matter on appeal, the lower court may not take any action on those intertwined matters until the appeal is concluded. **Id.** Here, as previously stated, Appellants' Section 8103(d) petitions to have Schluth's foreclosure judgment marked as satisfied, discharged, and released could not be acted upon while Appellants' appeals were pending before our Court. At the time Appellants' petitions were filed, Appellants had appeals pending

challenging liability for the judgment, and even if affirmed to be liable, whether the amount awarded was proper. In fact, it was Appellants' position that they did not owe Schluth any money. Schluth could not petition the trial court for a deficiency judgment while the appeals were pending because a court's ability to fix a deficiency judgment once the fair market value of a property is ascertained, can only be measured against the amount of a valid judgment to arrive at the balance due, which then would constitute the deficiency judgment. Appellants' appeals challenging the foreclosure judgment precluded the trial court from considering deficiency judgment proceedings.

In his brief, Schluth argues almost exclusively that the court's August 8, 2019 order, entered on August 12, 2019, staying all further execution proceedings, relieved him of any obligation to petition for a deficiency judgment for the duration of the stay. This argument misses the mark. The stay order was entered only in the Breach of Contract Case.[14] A deficiency judgment now must be sought as a supplemental proceeding in the matter that produced the foreclosure judgment. *See* Section 8103(a). Therefore, a

_____

[14] The record provides no explanation as to why the trial court's stay of execution proceedings upon reconsideration was entered only in the Breach of Contract Case when the petition for reconsideration was filed to both actions. It is known, however, that the property was sold shortly before the stay order was entered.

stay in the Breach of Contract Case may not necessarily stay proceedings in the Foreclosure Case.

Schluth also argues that Appellants' claim is meritless because the trial court on remand assessed a deficiency judgment. We disagree. Our decision of June 30, 2020 in the First Appeal remanded the matter to the trial court to make factual findings whether there was a modification of the payment terms under the Note and Mortgage and then to enter an amount of damages consistent with those findings. At the time the First Appeal was filed, the property had been sold at sheriff's sale to Schluth but had not yet been sold in a private sale for $600,000.[15] On remand, the court found that there had been no modification of the payment terms and then proceeded to determine damages. In doing so, the trial court arrived at a net damage award to Schluth by reducing the damage award by the net sum received from the sheriff's sale and the subsequent private sale, and then by adjusting the interest due. The court arrived at a revised damage award of $92,616.09 which was entered as a judgment on March 8, 2021. In its findings of fact and conclusions of law supporting this net damage award to Schluth, the trial court did not refer to the net award as a "deficiency judgment." Rather, the award first was referred to as a "deficiency judgment" in the trial court's September 7, 2021 order denying Appellants' petitions to mark the judgments satisfied wherein it stated

---

[15] Consequently, our remand order to redetermine damages could not have contemplated the private sale amount as a part of the remand order.

that following remand, the court, on March 8, 2021, issued findings of fact and conclusions of law which set a "deficiency judgment" of $92,616.09. ***See*** n.8. Appellants apparently accepted this characterization as they too in connection with their application for a stay of execution proceedings ancillary to their Second Appeal to this Court, referred to the $92,616.09 judgment as a "deficiency judgment." ***See*** Application of Appellants, Krishavtar, Inc. and Barkrushna Panchal, for Stay of Execution Proceedings, 8/6/21, at ¶¶ 7, 11, 18 and 23. Regardless, referring to this damage award as a "deficiency judgment" does not make it so.

Under Section 8103(a) of the DJA, whenever real property is sold to a judgment creditor and the price is not sufficient to satisfy the amount of the judgment, in order to collect the balance due, the judgment creditor must file a petition with the court to fix the fair market value of the real property sold. The determination of fair market value is central to the court fixing the amount of a deficiency judgment and the amount that all debtors are entitled to be credited against the balance due on a judgment. ***See generally***, 42 Pa.C.S.A. § 8103(c). Where the fair market value of the property is in dispute, the court is obligated to hear evidence to determine and fix the fair market value of the property sold. ***Id.*** Here, no petition was filed to initiate the deficiency judgment process under the DJA. Nor was the trial court presented with any evidence as to the fair market value of the property sold. The amount of $600,000 that was used by the court to come to a net damage award may or

may not have reflected the fair market value of the property. While it is possible the parties could have agreed to this value as fair market value or that this amount ultimately could have been determined as fair market value, the amount was not subject to any fair market value evaluation. Without a petition alleging this amount as fair market value and the court accepting it as fair market value, or determining otherwise by hearing disputed evidence, the trial court's net damage award determined upon remand cannot be considered a deficiency judgment as that is contemplated under the DJA. The DJA sets forth specific procedures for the filing and consideration of fixing the fair market value of a property after a foreclosure sale in order to arrive at a deficiency judgment. The trial court's shortcut to this end, without an appropriate petition before the court, in calculating a net damage award upon remand did not meet the requirements of the DJA and therefore, its net award could not be considered a deficiency judgment.

We have not been asked to consider the amount of a deficiency judgment in this appeal, as this appeal is limited to whether the trial court erred in denying Appellants' Section 8103(d) petitions. Our decision today does no more than to conclude that the trial court did not possess jurisdiction to consider the Section 8103(d) petitions. When the trial court again is vested with jurisdiction over these cases, Schluth, if he so chooses, may seek a deficiency judgment within six months of jurisdiction being returned to the trial court. The return of these cases to the trial court when it again regains

jurisdiction may be the first time in these lengthy proceedings when the trial court may be able to consider a deficiency judgment petition to fix the fair market value of the property sold and to arrive at a deficiency judgment.[16]

Order vacated and case remanded to the trial court. Jurisdiction relinquished.

Judge Bowes files a concurring opinion in which Judge Stabile joins.

Judge McLaughlin files a concurring opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2023

---

[16] We offer no opinion at this time as to the effect of the trial court's prior net award of damages to Schluth in the amount of $92,616.09, as that may bear upon any deficiency judgment proceeding. Our June 30, 2020, remand order merely directed the trial court to determine whether the parties modified the payment terms of their agreements and to enter an amount of damages consistent with those findings. We in no way intended or instructed that revisiting the amount of damages should include deficiency judgment proceedings. We also note that none of the parties in the Second Appeal raised any issue that the net damage award found by the trial court did not qualify as a deficiency judgment.